[No. 1292.]

THE STATE OF NEVADA, EX REL. GEORGE B. WHITNEY, RELATOR, *v.* A. M. FINDLAY, REGISTRY AGENT, ETC., RESPONDENT.

CONSTITUTIONAL LAW — QUALIFICATIONS OF AN ELECTOR — RIGHT OF SUFFRAGE — LEGISLATIVE POWER. — Any citizen possessing the qualifications of an elector as defined in Sec. 1, Art. 2 of the constitution is entitled to the right of suffrage. It is not within the power of the legislature to deny, abridge, extend or change the qualifications of an elector as prescribed in the constitution.

IDEM—ACT PRESCRIBING QUALIFICATIONS OF ELECTORS (STAT. 1887, 106) UNCONSTITUTIONAL — REGISTRATION — OATH — MORMONS. — The act prescribing the qualifications of electors (Stat. 1887, 106,) prohibiting Mormons from voting and requiring applicants for registration to take an oath that they are not members of the Mormon church is in direct violation of Sec. 1, Art. II of the constitution, and is not authorized by Sec. 6, Art. II, requiring provision to be made by law for registration.

IDEM — LEGISLATURE — REASONABLE REGULATIONS — ELECTIVE FRANCHISE.—The legislature has the power to adopt such rules and prescribe such oaths as deemed necessary to test the qualifications of an elector, and to adopt such reasonable, uniform and impartial regulations of the constitutional rights of a voter as may be deemed necessary to preserve order at elections, to guard against fraud, undue influence or oppression, and to preserve the purity of the ballot.

APPLICATION for *Mandamus*.

The facts are stated in the opinion.

*Trenmor Coffin* and *Geo. S. Sawyer*, for Relator.

The constitution contains all of the requirements and qualifications which are or can be required of, or prescribed for, an elector in this state.

The statute of 1887 contains other and different and additional qualifications, and is therefore unconstitutional and void. (*State ex rel.* v. *Williams*, 5 Wis. 308; 68 Am. Dec. 67; *State* v. *Lean*, 9 Wis. 283; *State* v. *Tuttle*, 53 Wis. 49; *Barker* v. *The People*, 3 Cow. 686; 15 Am. Dec. 325.)

*J. D. Torreyson* and *Thomas H. Wells*, for Respondent.

By the Court, HAWLEY, J.:

Relator applied to respondent, a justice of the peace and *ex officio* registry agent of Panaca township in Lincoln county, to be registered as a voter, and offered to take the oath required by the act providing for the registration of the names of the electors. (Gen. Stat. 1505.) The registry agent refused to register his name unless he took the oath required by the "act prescribing the qualifications and modifying the oath for the registration of voters in conformity therewith." (Stat. 1887, 106.) This proceeding was thereupon instituted for the purpose of testing the validity of that act. Relator, in his application for a *mandamus* to compel respondent to register his name, affirmatively shows that he possesses all the qualifications of an elector, as prescribed by the constitution of this state. (Const. Art. II, Sec. 1;) that he could not take the oath prescribed by the act of 1887, because he is a member of, and belongs to, the "Church of Jesus Christ of Latter Day Saints," commonly called the "Mormon Church," and this was the only reason why he refused to take said oath. Upon the hearing of this case, it appearing so clearly to our minds that the relator was entitled to be registered, we ordered the writ to issue as prayed for by relator.

Section 1 of article 2 of the constitution provides that "every male citizen of the United States (not laboring under the disabilities named in this constitution) of the age of twenty-one years and upwards, who shall have actually, and not construct-

ively, resided in the state six months, and in the district or county thirty days next preceding any election, shall be entitled to vote for all officers that now are or hereafter may be elected by the people, and upon all questions submitted to the electors at such election: *provided*, that no person who has been or may be convicted of treason or felony in any state or territory of the United States, unless restored to civil rights, and no person who, after arriving at the age of eighteen years, shall have voluntarily borne arms against the United States, or held civil or military office under the so-called Confederate States, or either of them, unless an amnesty be granted to such by the federal government; and no idiot or insane person, shall be entitled to the privilege of an elector." Any citizen possessing the qualifications of an elector, as defined and declared in this provision of the constitution, and who is not disqualified by any of the provisions thereof, is entitled to the right of suffrage. It is not within the power of the legislature to deny, abridge, extend, or change the qualifications of a voter as prescribed by the constitution of the state. (*Davies* v. *McKeeby*, 5 Nev. 369; *Clayton* v. *Harris*, 7 Nev. 64; *State ex rel.* v. *Williams*, 5 Wis. 308; 68 Am. Dec. 65; *State* v. *Baker*, 38 Wis. 86; *Quinn* v. *State*, 35 Ind. 490; 9 Am. Rep. 754; *Monroe* v. *Collins*, 17 Ohio St. 685; *McCafferty* v. *Guyer*, 59 Pa. St. 111; *Kinneen* v. *Wells*, 144 Mass. 497; 59 Am. Rep. 105; *Rison* v. *Farr*, 24 Ark. 162; 87 Am. Dec. 52; *People* v. *Canaday*, 73 N. C. 222; 21 Am. Rep. 465.) The legislature, by the act of 1887, adopted additional disqualifications to those mentioned in the constitution, by declaring in positive terms that "no person shall be allowed to vote at an election in this state * * * who is a member of or belongs to the 'Church of Jesus Christ of Latter Day Saints,' commonly called the 'Mormon Church,' * * *" (Stat. 1887, 107, Sec. 1;) and in the same act sought to amend the oath to be administered to the elector by the registry agent, under the provisions of the registration law, by adding thereto that the elector was not a member of nor belonged to "the Church of Jesus Christ of Latter Day Saints, commonly called the 'Mormon Church.'" (Section 2.) The act was a direct attempt, in violation of the provisions of the constitution, to disfranchise the members of the Mormon church; to deny them the right of suffrage regardless of the question whether or not they possessed the qualifications of an elector as defined in the constitution.

It was suggested by respondent's counsel that the act of 1887

was, perhaps, authorized by the provisions of section 6, article 2, of the constitution, which declares that "provision shall be made by law for the registration of the names of the electors within the counties of which they may be residents, and for the ascertainment, by proper proofs, of the persons who shall be, entitled to the right of suffrage, as hereby established, to preserve the purity of elections, and to regulate the manner of holding and making returns of the same; and the legislature shall have power to prescribe by law any other or further rules or oaths as may be deemed necessary, as a test of electoral qualifications." The other or further rules or oaths which the legislature may prescribe are such as may be deemed necessary "for the ascertainment, by proper proofs, of the persons who shall be entitled to the right of suffrage," as established by the provisions of section 1 of article 2 of the constitution. Having adopted a provision for the registration of voters, the framers of the constitution deemed it proper to give the legislature the power to enact such rules and prescribe such oaths as might be necessary in order to determine who was entitled to be registered; and this could only be done by ascertaining in advance, by proper and reasonable proofs, the persons who would on the day of election, under the provisions of the constitution, be entitled to vote. If the view suggested by respondent's counsel, that the legislature has the power, under the guise of adopting further rules or oaths as a test of electoral qualifications, to declare, as set forth in the preamble to the act of 1887, that "it is deemed necessary for the peace and safety of the people of this state to exclude from participation in the electoral franchise all persons belonging to the self-styled 'Church of Jesus Christ of Latter Day Saints,' commonly called the 'Mormon Church,'" then, of course, it could by like methods exclude from the elective franchise all persons belonging to any other church, or members of any particular political party, social organization, or benevolent order. In brief, the right of suffrage guaranteed by the constitution, and of which we boast so much, would be placed entirely at the mercy, will, or caprice of the legislature. The legislature has no such power. The right of suffrage, as conferred by the constitution, is beyond the reach of any such legislative interference. It cannot be changed except by the power that established it, viz., the people, in their direct

sovereign capacity. In *McCafferty* v. *Guyer, supra,* where the legislature attempted to disfranchise certain persons who were not disfranchised by the provisions of the constitution from voting, the court, in reviewing the provisions of the act, said: "It attempts to disfranchise those who were enfranchised by the fundamental law of the commonwealth, and it enacts what shall be the evidence of disfranchisement. It is not, it does not profess to be, a regulation of the mode of exercise of the right to an elective franchise. It is a deprivation of the right itself. Can, then, the legislature take away from an elector his right to vote, while he possesses all the qualifications required by the constitution? This is the question now before us. When a citizen goes to the polls on an election day with the constitution in his hand, and presents it as giving him a right to vote, can he be told, 'True, you have every qualification that instrument requires. It declares you entitled to the right of an elector, but an act of assembly forbids your vote, and therefore it cannot be received.' If so, the legislative power is superior to the organic law of the state; and the legislature, instead of being controlled by it, may mold the constitution at their pleasure. Such is not the law." The legislature may adopt such rules and prescribe such oaths as may be deemed necessary to test the qualifications of an elector. It also has the power to adopt such reasonable regulations of the constitutional rights of a voter as may be deemed necessary to preserve order at elections, to guard against fraud, undue influence or oppression, and to preserve the purity of the ballot. "All regulations of the elective franchise, however, must be reasonable, uniform, and impartial. They must not have for their purpose directly or indirectly to deny or abridge the constitutional right of citizens to vote, or unnecessarily to impede its exercise; if they do, they must be declared void." (Cooley Const. Lim. 758; *Daggett* v. *Hudson,* 43 Ohio St. 548; 54 Am. Rep. 832; *State* v. *Butts,* 31 Kan. 554; *Capen* v. *Foster,* 12 Pick. 488; 23 Am. Dec. 632; *Page* v. *Allen,* 58 Pa. St. 346, 347; 98 Am. Dec. 272; *McMahon* v. *Mayor,* 66 Ga. 224; 42 Am. Rep. 65.)

The reasons we have stated are amply sufficient to justify the issuance of the writ of *mandamus* as prayed for, and we therefore deem it unnecessary to discuss the other points presented by relator, as to whether or not the act is repugnant to the provisions of section 4 of article 1 of the constitution.