# Cook v. The State.

*Indictment for Selling Oleomargarine in Imitation of Butter.*

1. *Construction of statute; effect of punctuation.*—In proper cases, punctuation marks may be regarded as aids in arriving at the proper meaning of statements or provisions in a statute; but in the construction of statutes, punctuation can not be accorded a controlling influence, but the language of statute, and not their technical grammatical construction or punctuation, must control.

2. *Same; act to prevent deception in the manufacture and sale of butter.*—Section 1 of the "Act to prevent deception in the manufacture and sale of imitation butter," approved February 18, 1895, (Acts 1894-95, p. 777), providing that no person "shall render and manufacture, sell, offer for sale, expose for sale, or have in his possession, with intent to sell or serve to persons, guests, boarders, or inmates; in any hotel, eating-house, restaurant," &c., any article or compound made wholly or partly out of any fat, oil, or oleaginous substance, which shall be in imitation of yellow butter, is wrongly punctuated, and should be read as if there was a comma after the words "to sell,"

[Cook v. The State.]

and no semi-colon after the word "inmates;" and when thus read, it is not open to the construction that it only prohibits the sale or offer to sell in a hotel, eating-house, &c., but prohibits the sale of the articles, specified to any person, or the serving of it to guests, boarders, or inmates in any hotel, eating-house, &c.

3. *Act to prevent deception in the manufacture and sale of imitation butter; sufficiency of indictment.*—The statute, (Acts 1894-95, p. 777), which prohibits the sale of "any article, product or compound, made wholly or partly out of any fat, oil, oleaginous substance or compound thereof, not produced directly and at the time of the manufacture from unadulterated milk, or cream from the same, which shall be in imitation of yellow butter, produced from pure, unadulterated milk, or cream from the same," is limited in its prohibition to, and includes only, such articles which shall be in imitation of yellow butter, produced from pure, unadulterated milk, or the cream from such milk; and an indictment under such statute, which charges a sale of oleomargarine, an "article, product or compound made wholly or partly out of a fat, oil, or oleaginous substance or compound thereof," and avers that it was not produced directly and at the time of manufacture from pure, unadulterated milk, or from the cream from such milk, and that such article, product or compound "was in imitation of yellow butter, produced from pure, unadulterated milk, or cream from the same," sufficiently describes the offense, and is not open to demurrer, either upon the ground that it fails to charge an offense, or because of insufficient description of the offense.

4. *Same; within the police power of the State and not unconstitutional.* The act "to prevent deception in the manufacture and sale of imitation butter," approved February 18, 1895, (Acts 1894-95, p. 777), prohibiting the sale of any "article, product or compound made wholly or partly out of any fat, oil, oleaginous substance or compound thereof, not produced directly and at the time of manufacture from unadulterated milk or cream from the same, which shall be in imitation of yellow butter produced from pure, unadulterated milk, or cream from the same," is within the police power of the State, its purpose being to prevent imposition and deception upon others, and is not unconstitutional, as violating or abridging any of the rights guaranteed to the citizens under the constitution of the State or of the United States.

5. *Same; sufficiency of evidence to authorize conviction.*—To justify a conviction for the violation of such statute, in the sale of oleomargarine, the prosecution must show, not only that the sale of oleomargarine, or of an article, product or compound specified in the statute was made, but must go further and show that the oleomargarine or article was sold "in imitation of yellow butter produced from pure, unadulterated milk, or cream from the same."

6. *Same; admissibility of dictionary in evidence*—On a trial under an indictment which charges the selling of oleomargarine in violation of the statute "to prevent deception in the manufacture and sale of

imitation butter," (Acts 1894–95, p. 777), Webster's International Dictionary, being a standard authority, is admissible in evidence to prove the definition of "oleomargarine," and other words pertaining to such article.

7. *Same; admissibility of evidence as to the color of the article sold.*— Under the provisions of the statute "to prevent deception in the manufacture and sale of imitation butter," (Acts 1894–95, p. 777), which prohibits the sale of any article, product or compound made wholly or partly out of any fat, oil, or oleaginous substance, not produced directly and at the time of manufacture from pure, unadulterated milk, or cream from the same, which shall be in imitation of yellow butter produced from such milk, or cream from the same, provided that nothing in the act shall be construed to prohibit the sale of oleomargarine in such manner as will advise the consumer of its real character, free from coloration or ingredients that cause it to look like butter, by having it stamped with its true name, in the prosecution for the sale of oleomargarine, in violation of such statute, evidence that the oleomargarine sold was of the color of yellow butter is admissible.

APPEAL from the City Court of Montgomery.

Tried before the Hon. JOHN G. WINTER.

The appellant was tried and convicted under the following indictment: "The grand jury of said county charge that before the finding of this indictment Eason T. Cook did unlawfully sell or offer for sale one pound of oleomargarine to one William Owen, which said oleomargarine was an article, product or compound made, wholly or partly, out of fat, oil, or oleaginous substance or compound thereof, and which said oleomargarine was not produced directly, and at the time of its manufacture, from unadulterated milk, or cream from the same, and which said oleomargarine was in imitation of yellow butter produced from pure, unadulterated milk, or cream from the same.

"The grand jury of said county further charge that before the finding of this indictment Eason T. Cook did unlawfully sell to one William Owen, one pound of oleomargarine, it being an article, product, or compound made wholly or partly out of beef fat, and which said oleomargarine was not produced directly, and at the time or its manufacture, from unadulterated milk, or cream from the same, and which said oleomargarine was in imitation of yellow butter produced from pure, unadulterated milk, or cream from the same.

"The grand jury of said county further charge that

[Cook v. The State.]

before the finding of this indictment Eason T. Cook did unlawfully and knowingly sell, offer for sale, expose for sale, or have in his possession with intent to sell, a certain article, product or compound, to-wit, oleomargarine, which was made wholly or partly out of certain fats, oils, oleaginous substances or compounds thereof, to the grand jury unknown, which said oleomargarine was not produced directly and at the time of its manufacture from unadulterated milk, or cream from such milk, and which said oleomargarine was in imitation of yellow butter produced from pure, unadulterated milk, in this, that said oleomargarine was made the color of such butter, against the peace and dignity of the State of Alabama.''

To this indictment the defendant demurred as follows : ''The defendant demurs to the first and second counts of said indictment on the ground that said counts do not allege wherein or in what respect said oleomargarine was in imitation of yellow butter.

''2. Said counts fail to allege that said oleomargarine was in imitation of yellow butter in such respect as made it look like butter.

''3. Said counts fail to allege that said oleomargarine was in imitation of yellow butter in respect of color, weight, consistency, chemical composition, or other quality, whereas the statute attempts to punish the making or selling of oleomargarine in imitation of yellow butter in respect of its color only.''

The defendant further demurred to each and every count of the indictment on the following grounds :

''1. Said counts do not allege that said oleomargarine was sold, offered for sale, exposed for sale, or had in the possession of the defendant with intent to sell, in any hotel, eating house, restaurant, dining car, boarding house, public or private hospital, school or penal institution.

''2. Said counts do not allege that the said oleomargarine was not sold, offered or exposed for sale, or had in the possession of the defendant with intent to sell in, such manner as advised the consumer of its real character.

''3. The statute approved February 18, 1895, p. 777, Sess. Acts 1894–5, is violative of the constitution of Alabama.

''4. It is violative of the constitution of the United States.

[Cook v. The State.]

"5. Said statute destroys the constitutional guaranty of the equal protection of the law.

"6. Said statute invades the constitutional rights of liberty and the enjoyment of property."

The demurrers were overruled, and to this ruling the defendant duly excepted.

On the trial of the cause, as is shown by the bill of exceptions, the State introduced one William Owen as a witness, who testified that a few hours before he went before the grand jury as a witness in this case, he went to the store of the defendant in the city of Montgomery and asked him to sell him a pound of oleomargarine; that the defendant said he had real butter, but would sell him a pound package of the oleomargarine, which was stamped with the words "Oleomargarine." The oleomargarine was of the color of yellow butter. Witness did not know, of his own knowledge, that the article sold to him was oleomargarine, and he could not say whether it was colored by the introduction of coloring matter or other ingredients, which caused it to look like butter.

Peter B. Mastin testified to the same facts as to the purchase of the oleomargarine, and he further testified that he had been for many years engaged in the making and selling of butter, and that the oleomargarine bought by Owen from defendant was the color of yellow butter.

The State offered in evidence the word "Oleomargarine" and its definition, as contained in Webster's International Dictionary, and also other words as contained in said dictionary pertaining to the definition of oleomargarine. Upon the introduction of these words, as contained in said dictionary, the defendant objected on the ground that it was incompetent; that the book was not authority on the subject, and that it failed to state the natural color of oleomargarine. The court overruled this objection, admitted the evidence, and to this ruling the defendant duly excepted. The time and the venue were proved as laid in the indictment.

This being all the evidence introduced on the trial of the case, the court upon the request of the solicitor, gave to the jury the following written charge: "If you believe the evidence beyond a reasonable doubt, you will find the defendant guilty." To the giving of this charge the defendant duly excepted.

[Cook v. The State.]

SAYRE & PEARSON, for appellant.—The demurrers to the indictment should have been sustained. The statute under which the indictment was framed, prohibited only the selling or serving of the article, substance or compound specified therein, in any hotel, eating-house, restaurant, &c., and not the general sale thereof.

Admission in evidence of the dictionary to prove the meaning of oleomargarine and words in reference thereto was erroneous.—12 Amer. & Eng. Encyc. of Law, 151–152.

· The statute is unconstitutional, as invasive of private right and personal liberty.—See dissenting opinion of Justice Field in *Powell v. Pennsylvania*, 127 U. S. 678.

WILLIAM C. FITTS, Attorney-General, for the State, cited *Commonwealth v. Huntley*, 156 Mass. 236; *Commonwealth v. Russell*, 162 Mass. 520; *Commonwealth v. Crane*, 162 Mass. 506; *Commonwealth v. Stewart*, 159 Mass. 113.

COLEMAN, J.—The defendant was indicted and convicted for a violation of a statute entitled "An act to prevent deception in the manufacture, and sale of imitation butter."—Acts 1894–95, p. 777. ·There are some clerical errors in the first section of the act as published, which should be corrected. The act as adopted and enrolled reads as follows :

"Section 1. Be it enacted by the General Assembly of Alabama, That no person by himself, or his agents, or servants shall render *or* manufacture, sell, offer for sale, expose for sale, or have in his possession with intent to sell or serve to persons, guests, boarders, or inmates ; in any hotel, eating house, restaurant, dining car, or boarding house, or public ·or private hospital, school or penal institution, any article, product or compound, made wholly or partly out of any fat, oil, or oleaginous substance, or compound thereof not produced directly, and at the time of manufacture, from unadulterated milk, or cream from the same, which shall be in imitation of yellow butter produced from pure unadulterated milk or cream from the same ; *Provided*, that nothing in this act shall be construed to prohibit the manufacture, or sale of oleomargarine in such manner as will advise the consumer of its real character free from coloration or ingredient that causes it to look like butter by having it stamped with its true name."

[Cook v. The State.]

Several grounds of demurrer were interposed to the first and second counts of the indictment and to the indictment as a whole, which were overruled by the court, which rulings are assigned as error. It is contended that the statute only prohibits the sale or offer to sell "in a hotel, eating house," &c., and this assignment is based upon the punctuation indicated by the semicolon made after the words "or inmates." Punctuation marks may, in proper cases, be regarded as aids in arriving at the correct meaning of statements in a statute, but in construing statutes, punctuation cannot be accorded a controlling influence. Courts do not hesitate to re-punctuate, when it is necessary to arrive at the true meaning.—2 Bouv. Law Dict. 487, Title, Punctuation, and authorities cited; *Danzy v. State*, 68 Ala. 296. It is evident from reading the whole statute that a semicolon was improperly used, and that a mere comma after the words "to sell" would have been the proper punctuation. When thus read, it is evident the grounds of demurrer directed against this portion of the statute were properly overruled.

While the statute prohibits the sale of any "article, product, or compound made wholly or partly out of any fat, oil, oleaginous substance or compound thereof, not produced directly, and at the time of manufacture, from unadulterated milk, or cream from the same, which shall be in imitation of yellow butter produced from pure unadulterated milk, or cream from the same," the prohibition is limited and includes only such "which shall be in imitation of yellow butter" produced from the character of milk or cream therein specified. An indictment which charges a sale of the "article, product or compound," and avers that it was "made wholly or partly out of a fat, oil or oleaginous substance, or compound thereof," and that it was not produced directly and at the time of manufacture from unadulterated milk, or cream from the same, (that is, cream from unadulterated milk), and avers that such article, product or compound was in imitation of yellow butter produced from pure, unadulterated milk, or cream from the same, sufficiently describes the offense, and is not open to demurrer either because it fails to charge an offense or because of an insufficient description. The demurrer pred-

[Cook v. The State.]

icated upon either of these objections was properly over-
ruled.

That the act is within the police powers of the State
has been thoroughly established by the decisions of the
highest court in many States, and the principles upon
which these decisions are based we think have been rec-
ognized by the Supreme Court of the United States; at
least,our attention has been called to no decision in con-
flict with the conclusion reached. The question is fully
discussed in *Commonwealth v. Huntley*, 156 Mass. 236,
and many authorities are cited. We are satisfied with
the conclusion reached by that court, and until the
principles therein declared have been overruled by the
Supreme Court of the United States, will maintain
them as sound and correct expositions of the law of the
police powers of the State.

It will be seen that the statute does not prohibit the
manufacture or sale of oleomargarine or any article,
product or compound made wholly or partly out of any
fat, oil, &c., which is not made in imitation of yellow
butter as therein described. The purpose of the statute
is to prevent the imposition of a deception upon others,
and this is one of the main reasons why the statute is
within the police powers of the State. To justify a con-
viction the prosecution must show, not only the sale of
oleomargarine, or the sale of the "article, product or
compound" therein defined and specified, but must go
further and show that it was made or sold "in imitation
of yellow butter produced from pure,unadulterated milk,
or cream from the same."

There was no error in the admission of Webster's In-
ternational Dictionary. The courts are expected to
know, and take knowledge of the meaning of any ver-
nacular word which may be ascertained by reference to
any standard authority. The admission in evidence of
such standard authority may be superfluous, but is not
erroneous. We know, or can ascertain by reference to
the International Dictionary or the Century Dictionary,
that oleomargarine is a "product or compound made
wholly or partly out of any fat, oil or oleaginous sub-
stances."—*Adler's Case*, 55 Ala. 16; *Haygood's Case*, 98
Ala. 62 ; 12 Am. & Eng. Encyc. of Law, p. 150; 1 Greenl.
Ev., § 5.

Courts do not know that oleomargarine when manu-

[Scott v. The State.]

factured or sold is in imitation of yellow butter. This must be proven. The witness Owen testified that the oleomargarine sold "was of the color of yellow butter." In this he was corroborated by the witness Mastin. There was no evidence to the contrary. In our opinion, the indictment was sustained by evidence without conflict, and there was no error in the charge given.

Affirmed.