[No. 2029]

THE STATE OF NEVADA, EX REL. LEM ALLEN, PETITIONER, *v.* GEORGE BRODIGAN, SECRETARY OF STATE OF THE STATE OF NEVADA, RESPONDENT.

1. ELECTIONS — NOMINATIONS — PRIMARY ELECTIONS — NOMINATION BY PARTY CONVENTION—STATUTORY PROVISIONS.

   The original primary election law (Stats. 1909, c. 198), sec. 2, which declared that the act should "not apply to special elections to fill vacancies, to the nomination of party candidates for presidential electors," and that it should not be construed as affecting the right of political parties to hold conventions for the selection of delegates to national conventions, was amended by Stats. 1911, c. 165, to provide that the act should "not apply to special elections to fill vacancies to the nomination of party candidates for presidential electors," thus omitting the comma after the word "vacancies" as shown in the original act. Section 27 of the original act provided that vacancies occurring after the holding of any primary election should be filled by the party committee of the city, county, or state as the case might be. The omission of the comma must be regarded as the result of a clerical error, otherwise two methods of selecting candidates to fill vacancies in the office of presidential electors, and hence electors chosen by a convention of a political party were the only names entitled to go upon the official ballot.

2. STATUTES—CONSTRUCTION—PUNCTUATION.

   In construing statutes rendered uncertain by punctuation, the courts properly regard such marks only as an aid in arriving at the correct meaning of the words of a statute, not as having a controlling influence; and courts should not hesitate to repunctuate a statute where it is necessary to arrive at the

true legislative intent or where punctuation or omission thereof is caused by clerical error or inadvertence, or where it is evident that the punctuation gives to the statute an absurd or meaningless interpretation.

3. STATUTES—CONSTRUCTION—AVOIDANCE OF INCONSISTENCY.

In the construction of statutes, courts should harmonize inconsistent parts of acts bearing upon the same question when it is possible to arrive at the true legislative intent thereby, and should avoid a construction which creates inconsistent positions whenever it can possibly be done without doing violence to the legislative intent.

4. MANDAMUS—PREMATURE APPLICATION FOR WRIT—DENIAL.

An application for *mandamus* to compel the secretary of state to accept and file certificates of nomination of presidential electors chosen at a Democratic party convention, brought before the expiration of the time provided for filing with the secretary of state certificates of nomination by convention, is premature and must be denied.

5. EVIDENCE—PRESUMPTIONS—PERFORMANCE OF OFFICIAL DUTY.

It will be presumed that the secretary of state will do his duty in filing and accepting certificates of nomination when presented at the proper time.

ORIGINAL PROCEEDING. *Mandamus* by the State, on the relation of Lem Allen, against George Brodigan, Secretary of State of the State of Nevada. **Writ denied.**

The facts sufficiently appear in the opinion.

*James D. Finch,* for Petitioner.

*Cleveland H. Baker,* Attorney-General, for Respondent.

By the Court, SWEENEY, C. J.:

This is an application for a writ of *mandamus* to compel the secretary of state to accept and file the certificates of nomination of the three regularly nominated presidential electors of the Democratic party, chosen in regular convention assembled, as the exclusive nominees for said offices of the Democratic party to be voted for at the general election in November, 1912.

It appears the secretary of state, in issuing his call for the primary election to be held in September, 1912, included in the offices to be voted for at the primary election "Three Presidential Electors." It further appears

that the Democratic party, in a regular state convention, duly authorized, called, and convened, nominated three presidential electors who, it is contended by petitioner, are the only authorized persons legally privileged to appear on the official ballot in November to be voted for as the presidential electors of the Democratic party, and the law does not permit or authorize presidential electors to be selected at the primaries under the provisions of the primary law.

A disposal of the point in issue calls for an examination and construction of the statutes bearing upon the point in issue, wherein it appears there is a conflict of opinion by the respective parties as to the meaning of the statutes in question.

Section 2 of the original primary election law, passed by the Legislature of Nevada March 23, 1909 (Stats. 1909, 273), which pertains to the point in issue, reads as follows: "Sec. 2. All candidates for elective public offices shall be nominated as follows: (1) By direct vote at primary elections held in accordance with the provisions of this act; or (2) by nominating petitions signed and filed as provided by existing laws. Party candidates for the office of United States senator shall be nominated in the manner provided herein for the nomination of candidates for state offices. This act shall not apply to special elections to fill vacancies, to the nomination of party candidates for presidential electors; nor to the nomination of officers of the municipalities, whose charters provide a system for nominating candidates for such offices; nor to the nomination of officers for reclamation and irrigation districts; nor to school district officers or school trustees; nor shall it be construed as restricting or affecting the right of political parties to hold, under existing laws, which are hereby continued in force for all such purposes, primaries and conventions for the selection of delegates to national conventions."

A simple reading of this section in question makes it manifest that the legislature did not intend that presi-

dential electors should be included in the primary system then adopted for the purpose of electing nominees, because it is especially provided in said section, after designating that all candidates elected for public offices shall be nominated, as follows: That "this act shall not apply * * * to the nomination of party candidates for presidential electors."

Prior to the enactment of the new primary law the mode of selecting presidential electors was by convention with the usual exceptions providing for their election, and the law pertaining thereto has in no material respect been changed from the law now governing the election of presidential electors. The legislature on March 23, 1911, passed an amendatory act to the primary law (Stats. 1911, 334), wherein, among other provisos, they amended the latter portion of section 2, above quoted, to read as follows: "This act shall not apply to special elections to fill vacancies to the nomination of party candidates for presidential electors, nor to the *nomination of officers of the incorporated cities, whose charters or ordinances now or may hereafter provide a system of nominating candidates for such offices,* nor to the nomination of officers for reclamation and irrigation districts; nor to school district officers or school trustees; nor shall it be construed as restricting or affecting the right of political parties to hold, under existing laws, which are hereby continued in force for all such purposes, primaries and conventions for the selection of delegates to national conventions."

In viewing section 2 of the original primary act of 1909 in the light of the amendment, it will be seen that section 2 of the original act was enlarged so as not to apply to the nomination of officers of "incorporated cities whose charters or ordinances now or may hereafter provide a system for nominating candidates for such offices"; the word "municipal" having been stricken out and the words "incorporated cities" inserted, and the words "or ordinances now or may hereafter" added to section 2 by the amendatory act. Otherwise than as

here pointed out, the entire language of the original act remained practically unchanged. An examination of the original enrolled bills, as filed in the office of the secretary of state, of the original  primary act of 1909 and of the amendment of 1911, shows that in the original act a comma is placed after the word "vacancies" which in the amendatory act is omitted. The query arises as to whether the omission of the comma, as indicated, was intentional, or whether omitted by a mistake or by inadvertence, changes the original act by intent or otherwise to the extent of providing that presidential electors must be selected at the primaries rather than by convention as heretofore provided.

A close examination and reading of the statutes in question and the entire primary election law convinces us that the legislature when it passed the original primary election act never intended to preclude any political party from holding a state convention as they had done theretofore, for selecting candidates for the various offices, but when so selected for certain offices the nominations as made were only recommendatory, and the nominees as selected by the convention could be rejected or accepted at the primaries as the people chose. (*Riter* v. *Douglass*, 32 Nev. 420.)

It is equally apparent that the legislature contemplated that political conventions would be held in the future for the purpose of selecting delegates to the national convention, and for other political purposes and matters, and they especially excepted the nomination of presidential electors from the primary act and left them to be nominated by convention as of old.

In construing statutes which are rendered in doubt or uncertain by punctuation marks, courts should and do properly regard punctuation marks only as an aid in arriving at the correct meaning of the words of the statutes, and in gleaning the true legislative intent, and for this reason, punctuation marks cannot be given a controlling influence. Courts should not hesitate to repunctuate a statute where it is necessary to arrive at

the true legislative intent, or where it is manifest that the punctuation or omission thereof is caused by clerical error, inadvertence, or mistake, or where it is evident that the punctuation gives to the statute an absurd or meaningless interpretation. (*Howe* v. *Coldren,* 4 Nev. 171; *Holmes* v. *Phoenix Insurance Co.,* 98 Fed. 240, 39 C. C. A. 45, 47 L. R. A. 308; *Cook* v. *State,* 110 Ala. 40, 46, 20 South. 360; Cyc. vol. 36, 117, 118a.)

In the present act the omission of the comma after the word "vacancies" we believe to be either a clerical error, omission, or mistake of the enrolling clerk, and not expressive of the legislative intent, particularly in view of the fact that the section with the comma omitted as appears in the amended section of the act of 1911 creates an absurd and meaningless expression and contemplates an anomaly in our political system unheard of, to wit, in that there can be no such thing "as a special election to fill vacancies to the nominations." Again, it might be observed that the omission of the comma after the word "vacancies" as it appears in section 2 of the amendatory act of 1911 is not in keeping with the rules of good syntax and grammar, because the use of the preposition "to" following the word "vacancies" is inconsistent with good grammar, and we believe that if such an amendment had been intended the preposition "to" would have been stricken out and the word "in" inserted in its place.

A careful reading of the primary act will reveal that section 27 of said act provided, among other things, as follows: "Vacancies occurring after the holding of any primary election shall be filled by the party committee of the city, county, city and county, district or state, as the case may be"—and would cover any emergency which would arise making it necessary to fill any vacancies which may occur in the presidential electors who might have been selected by a state convention. In view of this section there was no necessity of the legislature to make provision to fill vacancies which might occur in the list of presidential electors.

Construing the statutes as we have, section 2 as

amended in the act of 1911 becomes in thorough harmony with section 27 of the primary act. To hold otherwise would render an inconsistency in the law applicable to elections for the filling of vacancies which may occur in nominees for presidential electors, because, if we adopt any other view as contended for by the petitioner, we would have two methods of selecting candidates to fill the vacancies which might occur in the presidential electors, to wit, by special election, "and by appointment by the party committee," etc.

It is a fundamental rule of construction that courts should harmonize, wherever possible, inconsistent parts of acts bearing upon the same question when it is possible to arrive at the true legislative intent by so doing, and to avoid a construction which creates inconsistent positions wherever it is possible to do so without doing violence to the legislative intent.

We think the names of the presidential electors as selected at the Democratic convention of the Democratic party held at Fallon in May, 1912, are, under the law, the only entitled presidential electors to go upon the official ballot as representing the Democratic party for the general election in November, 1912.

We come now to the prayer of the petitioner wherein it is asked that a writ of *mandamus* issue against the secretary of state to compel him to accept and file the certificates of nomination of the said presidential electors chosen at the said Democratic convention.

The following part of section 1839, Revised Laws of Nevada, which reads as follows, seems to have escaped the attention of all counsel in the present proceeding: "Certificates of nomination required to be filed with the secretary of state shall be filed not more than sixty days nor less than fifty days before the day of election when the nomination is made by convention, and not more than sixty days and not less than forty-five days before the day of election when the nomination is made under the provisions of section 4 of this act."

In view of the fact that a specific time is designated

by statute when these certificates of nomination must be filed, and that time not having arrived, the application for the writ is premature and must be denied.

There is nothing, however, to prevent the petitioner filing the certificates of the presidential electors in question at the proper time, and it is presumed that the secretary of state will do his duty in filing and accepting them when so presented at the proper time.

For the foregoing reasons the application for the writ will be denied. Let such be the order.