# REPORTS OF CASES

DETERMINED IN

# THE SUPREME COURT

OF THE

## STATE OF NEVADA

### OCTOBER TERM, 1913

[No. 2091]

NEVADA TAX COMMISSION, PETITIONER, *v.* J. H. CAMPBELL, LEO SPRINGMEYER, AND H. W. SETTLEMEYER, THE BOARD OF COUNTY COMMISSIONERS AND EX OFFICIO BOARD OF EQUALIZATION OF DOUGLAS COUNTY, AND H. C. JEPSEN, COUNTY CLERK AND EX OFFICIO CLERK OF THE BOARD OF COUNTY COMMISSIONERS AND COUNTY BOARD OF EQUALIZATION, AND EX OFFICIO TAX RECEIVER OF DOUGLAS COUNTY, RESPONDENTS.

1. TAXATION—EQUALIZATION—POWERS OF STATE BOARDS.

The act of March 20, 1913 (Stats. 1913, c. 134), sec. 3, requires the state tax commission to hold a regular session on the second Monday in October, at which session it shall equalize property valuations as provided in section 6. Section 4 provides that the commission shall have power to exercise general supervision and control over the entire revenue system of the state, in pursuance whereof it shall possess special power, among others, to require assessors, sheriffs, as ex officio collectors of licenses, and the clerks of county boards of equalization, to furnish such information in relation to assessments, licenses or the equalization of valuations as it may demand. Section 6 provides that at its regular session in October it shall review the tax rolls of the various counties, and may raise or lower, for the purpose of state equalization, the valuations therein. *Held*, that while there is no express provision requiring revenue officers of the several counties to

deliver or transmit to the commission the assessment roll, where the commission determines that, for the performance of its duties, it is convenient or necessary to have such rolls and makes demand therefor, it is the duty of the county revenue officers to comply with such demand.

2. TAXATION—DUTIES—LEGISLATIVE REGULATIONS.

The act of March 20, 1913 (Stats. 1913, c. 134), sec. 4, authorizing the state tax commission to exercise general supervision and control over the entire revenue system of the state, does not trespass upon any inherent right of county revenue officers; their duties being within the control of the legislature.

3. MANDAMUS—PETITION—SUFFICIENCY.

Where, in a *mandamus* proceeding by the state tax commission to compel county revenue officers to deliver or transmit to the commission the assessment rolls and tax lists of the county, the petition did not allege a demand upon the respondents, it would not be presumed that such a lawful demand would be refused.

4. MANDAMUS—DEFENSES—PREMATURE APPLICATION.

*Mandamus* would not issue to compel county revenue officers to transmit the county assessment rolls and tax lists to the state tax commission for use at its session, commencing on the second Monday in October, until such time arrived, since such revenue officers were not in default until that time, and *mandamus* will not issue in anticipation of an officer's failure to perform a duty.

ORIGINAL PROCEEDING in *mandamus* by the Nevada Tax Commission against the Board of County Commissioners, and as the ex officio Board of Equalization, the Clerk of said Boards and the ex officio Tax Receiver, of Douglas County.  **Premptory writ denied.**

The facts sufficiently appear in the opinion.

*Geo. B. Thatcher*, Attorney-General, for Petitioner.

*F. E. Brockliss*, District Attorney of Douglas County, and *Wm. Woodburn*, for Respondents.

By the Court, NORCROSS, J.:

This is an original proceeding in *mandamus* to require respondents to forward to the petitioner, the Nevada Tax Commission, at Carson City, the tax and assessment roll of Douglas County, for the year 1913.

The petition alleges that respondents have in their custody, control, and possession the said county tax and

assessment roll, and that under and by virtue of an act of the legislature entitled "An act in relation to the public revenues, creating the Nevada Tax Commission, defining its powers and duties, and matters relating thereto, and repealing all acts and parts of acts in conflict herewith," approved March 20, 1913 (Stats. 1913, p. 175), it is the duty of respondents to forward the said tax and assessment roll to the said Nevada Tax Commission, at its office at Carson City, as soon as said tax and assessment roll has been corrected by the county board of equalization, and not later than the second Monday in October, 1913; that respondents have completed and made all corrections required by law as such county board of equalization; that respondents as custodian of such tax and assessment roll, refuse and neglect, and will continue to refuse and neglect, to forward such tax and assessment roll to said Nevada Tax Commission before the regular session of said commission beginning on the second Monday in October, 1913, or at any other time and place as required by law; that unless the petitioner shall have before it at the said time and place the said tax and assessment roll, it will be impossible for it to review the tax and assessment rolls of the various counties of the state, and to perform its duties as required by law. In response to the alternative writ issued and served in this proceeding, respondents have answered, admitting certain allegations of the petition, and, further answering, they deny that the said Nevada Tax Commission has any right to compel respondents, or either of them, to forward to the office of petitioner the said tax and assessment roll as prayed for in the petition, but that when ordered by this honorable court so to do, they are ready and willing to forward the same to said commission; deny that it will be impossible for petitioner to perform its duties as required by law until said tax and assessment roll shall be before the said commission at its office in Carson City, for the reason that all necessary information can be obtained at the office of the county clerk at the county-seat of Douglas County.

1. By the act of March 20, 1913, *supra,* it is provided in section 3 that said state tax commission shall keep its office at Carson City, and that it shall hold annually two regular sessions, and that "one regular session shall be held annually beginning on the second Monday in October of each year, at the same hour (10 o'clock a. m.), and continue from day to day until the business is completed, at which said commission shall equalize property valuations in the state as provided in section 6 of this act."

Section 4 of the act, among other things, provides: "Said Nevada Tax Commission, hereinafter and heretofore referred to as 'said commission,' is hereby empowered to exercise general supervision and control over the entire revenue system of the state; and in pursuance whereof shall possess the following special powers: First — To confer with, advise and direct assessors, sheriffs (as ex officio collectors of licenses), and the county boards of equalization, as to their duties, and to direct what proceedings, actions or prosecutions shall be instituted to support the law. * * * Third—To have final powers (other than the courts) to equalize property valuations as provided in section 6 of this act. * * * Fifth—To require assessors, sheriffs (as ex officio collectors of licenses) and the clerks of county boards of equalization to furnish such information in relation to assessments, licenses or the equalization of property valuations as said commission may demand. * * * The enumeration of the said foregoing * * * special powers shall not be construed as excluding the exercise of any needful and proper power and authority of said commission, in the exercise of its general supervision and control over the entire revenue system of the state not in conflict with law."

Section 6 of said act provides: "At the regular session beginning on the second Monday in October of each year, said commission shall review the tax rolls of the various counties as corrected by county boards of equalization, and may raise or lower, for the purpose of state

equalization, the valuations therein as established by county assessors and county boards of equalization, on any class of property, or piece of property, in whole or in part in any county; and on certification thereof to the auditor of any county wherein such property is assessed, said auditor shall make the changes required in the assessment roll prior to the delivery of his completed tax roll to the ex officio tax receiver."

The state tax commission, by the provisions of section 4, quoted *supra,* is empowered to exercise general supervision and control over the entire revenue system of the state. It may require all subordinate revenue officers to furnish such information relative to assessments, licenses, and the equalization of property valuations as such commission may demand. In order to perform all duties imposed on the commission by the provisions of section 6, *supra,* it is a matter of the greatest convenience, if not an absolute necessity, that the commission have before it the assessment and tax rolls of the several counties of the state. While there is no specific provision in the statute, in so many words, specifying the duties of the revenue officers of the several counties, in whose custody the assessment roll may be, to deliver or transmit to the tax commission for the purpose of equalizing the same for state purposes, there is a duty imposed upon such revenue officers to furnish such information in relation to assessments or the equalization of property valuations as such commission may demand. If the commission determine that it is convenient or necessary to have the assessment rolls before it for the purpose of performing their duties as prescribed in section 6 of the act, and make demand therefor, we think there can be no question but that it becomes the duty of the revenue officers, upon whom such demand is made, to comply therewith.

2. Certainly the legislature did not intend to give the commission the power to demand action upon the part of revenue officers consistent with carrying out the powers and functions of the commission without intending to

impose the corresponding duty upon such officers to obey such demand. County governments are a part of the state government, and the revenue systems of the state and of the several counties are inseparably interwoven. The state pays a portion of the salaries of certain county officers who have to do with the assessment and collection of state and county taxes. The duties of such officers are within the control of the legislature, and when it has given to a state commission the power "to exercise general supervision and control over the entire revenue system of the state," it has not trespassed upon any inherent right of such county officers, and when a duty is imposed upon such commission, which duty, to be carried out, requires some act upon the part of some county revenue officers, such as the delivery to or transmission of the assessment rolls for use at the meeting at which it is made the specific duty of the commission to review the rolls, or certified copies of all or a portion thereof, for use then, or at any other time, and demand upon such officer is made therefor, we think an official duty is imposed by law for such official to comply with the lawful demands of such state commission.

3. We need not now consider whether a duty is imposed by law upon the respondents in the absence of any demand therefor upon the part of petitioner to deliver or transmit to the petitioner the said assessment rolls and tax lists prior to the second Monday in October of this year. There is no specific allegation in the petition that any demand has been made upon the respondents to deliver to or transmit said assessment roll or tax list, and it is not to be presumed that such a lawful demand will be refused.

4. Conceding, for the purposes of this case, that the allegation that respondents have refused to deliver the assessment roll is equivalent to an allegation that demand therefor has been made, nevertheless it is well settled that *mandamus* will not issue in anticipation that an officer will not perform his duty. Respondents could not be in default prior to October 13, 1913. It would

have been sufficient to have denied the issuance of the peremptory writ upon this ground alone; but, as the question presented is of such great public importance, and as counsel upon neither side has sought to avoid a decision upon merits, we have deemed it advisable to determine the same.

A peremptory writ will at this time be denied, with privilege of petitioner to renew application for the same at a future time, if it is so advised.