STATE OF NEVADA, ON THE RELATION OF A. J. SCHUR, RELATOR, *v.* LLOYD S. PAYNE, AS THE COUNTY CLERK OF CLARK COUNTY, STATE OF NEVADA, RESPONDENT.

No. 3172

January 8, 1937.                                     62 P. (2d) 921.

*Julian Thruston,* for Relator:

*Roger Foley,* District Attorney, and *Gray Mashburn,* Attorney-General, for Respondent:

**O P I N I O N**

By the Court, TABER, J.:

Original proceeding in mandamus. The facts in the petition are not challenged, but respondent, on general demurrer, took the position that the petition failed to state facts sufficient to warrant the issuance of the writ.

Relator will also be designated as petitioner herein. When the petition was filed (September 17, 1936), he was, and for some seven years had been, a citizen of the United States, over twenty-one years of age, and a resident of Clark County. On said 17th day of September 1936, and for more than ten days immediately prior thereto, he was a resident of Nelson township, in said county of Clark. The petition alleges that he is, and for some seven years last past has been, a qualified elector of said Clark County, State of Nevada.

Petitioner, not less than thirty days prior to the

primary election, filed with the respondent his declaration of candidacy and acceptance of candidacy for the office of justice of the peace of said Nelson township. At that time he was a resident of Las Vegas township, in said county of Clark. No other candidate filed a declaration of acceptance of candidacy for said office, and after the primary election had been held and the vote canvassed and entered upon the records, petitioner demanded of respondent that the former's name, as nominee for said office, be printed on the official ballots for the general election of November 3. This respondent declined to do, and further stated that he did not intend to do so. On August 25, 1936, petitioner gave up his residence in Las Vegas township and became a resident of said Nelson township, where he has since resided.

The main question presented for our consideration in this proceeding was whether petitioner was eligible for the office to which he aspired. Respondent's position was that petitioner was not eligible because, at the time of filing his nomination paper, as said declaration is frequently spoken of, he was not a resident of Nelson township.

Because of the limited time for printing the official ballots for the general election, counsel, at the hearing on the petition herein, stipulated that when the court reached its conclusion as to whether the writ should be issued, or the petition denied, its judgment or order might forthwith be entered, and the court's opinion filed later. On October 2, 1936, we directed the clerk to issue the peremptory writ, and this opinion is filed in accordance with the aforesaid stipulation.

Section 1 of article 2 of the state constitution (section 42 N. C. L.) provides, in part, that: "All citizens of the United States (not laboring under the disabilities named in this constitution) of the age of twenty-one years and upwards, who shall have actually, and not constructively, resided in the state six months, and in the district or county thirty days next preceding any

election, shall be entitled to vote for all officers that now or hereafter may be elected by the people, and upon all questions submitted to the electors at such election."

Section 3 of article 15 of the constitution (section 164 N. C. L.) reads: "No person shall be eligible to any office who is not a qualified elector under this constitution."

It is provided in section 4766 N. C. L. that: "No person who is not a qualified elector shall be eligible to any office of honor, profit, or trust, in and under the government and laws of this state."

All persons are equally eligible to office who are not excluded by some constitutional or legal disqualification; and in the absence of a constitutional or statutory provision, residence within the district over which the jurisdiction of the office extends is unnecessary to eligibility. 46 C. J. 936, 938, secs. 32, 36. The right of the people to select from citizens and qualified electors whomsoever they please to fill an elective office is not to be circumscribed except by legal provisions clearly limiting the right. Ward v. Crowell, 142 Cal. 587, at pages 590, 591, 76 P. 491. Unless, therefore, there be some provision in our constitution or some statutory enactment, or both, clearly making residence in Nelson township a prerequisite to petitioner's eligibility to the office for which he was a candidate, he was entitled to have his name printed on the official ballots for the general election.

In construing section 1, article 2, and section 3, article 15, of the state constitution, we must bear in mind that a "qualified elector" is not necessarily the same as a qualified voter. Caton v. Frank, 56 Nev. 56, 44 P. (2d) 521; State ex rel. Boyle v. State Board of Examiners, 21 Nev. 67, 24 P. 614, 9 L. R. A. 385; Bergevin v. Curtz, 127 Cal. 86, 59 P. 312. To be a qualified voter one must necessarily be a qualified elector, but the converse is not true. Any person possessing the qualifications of an elector, as set forth in the above-mentioned provision of the constitution, and who

is not disqualified by any of its provisions, is entitled to the right of suffrage. State v. Findlay, 20 Nev. 198, 200, 19 P. 241, 19 Am. St. Rep. 346. In the same case it is said that it is not within the power of the legislature to deny, abridge, extend, or change the qualifications of an elector as prescribed by the state constitution. In Bergevin v. Curtz, supra, the court said: "It is settled by the great weight of authority that the legislature has the power to enact reasonable provisions for the purpose of requiring persons who are electors, and who desire to vote, to show that they have the necessary qualifications; as by requiring registration, or requiring an affidavit or oath as to qualifications, as a condition precedent to the right of such electors to exercise the privilege of voting. Such provisions do not add to the qualifications required of electors, nor abridge the right of voting, but are only reasonable regulations for the purpose of ascertaining who are qualified electors, and to prevent persons who are not such electors from voting. * * * In this case the appellant would have been eligible to the office of supervisor of the district for which he was elected if his name had not been on the great register. He could not have voted at the election, and thus would have been deprived of voting for himself, if he so desired; but, having the constitutional qualifications, he was eligible to the office.

The meaning of the word "district," in section 1, article 2 of our constitution, is not clear. If it does not include "township" within its meaning, then relator was a qualified elector when he filed his nomination paper. While the question is not free from doubt, it is our opinion that the framers of the constitution did not intend the word "district," as used in said constitutional provision, to mean "township," or to be construed as including "township" within its meaning; and we shall proceed to state the reason which led us to this conclusion.

We learn from the Constitutional Debates and Proceedings of the Nevada State Constitutional Convention

of 1864 (pp. 14 and 24) that the proposed constitution framed by the earlier Nevada convention (1863) was adopted as the basis for the constitution of 1864. Mr. Johnson, president of the Nevada constitutional convention of 1864, gives us the further information (p. 17, Nev. Const. Deb. and Proc.) that the constitution of California was adopted as the basis of action by the Nevada convention of 1863. Mr. Johnson was referring to the California constitution of 1849, as amended to 1864, because the present constitution of that State was not adopted until 1879.

The pertinent part of section 1, article 2 of the California constitution, as it read in 1864, was as follows: "Every white male citizen of the United States, and every white male citizen of Mexico, who shall have elected to become a citizen of the United States, under the treaty of peace exchanged and ratified at Queretaro, on the 30th day of May, 1848, of the age of twenty-one years, who shall have been a resident of the State six months next preceding the election, and the county or district in which he claims his vote thirty days, shall be entitled to vote at all elections which are now or hereafter may be authorized by law."

The word "district" remained in section 1 of the right of suffrage article (article 2) in the California constitution until 1879, when the people of that state adopted a new constitution which, as amended, is their present constitution. The word "district" was entirely discarded in section 1 of said article 2 of the 1879 constitution of California, and it is not difficult to understand why when we read pages 1016 to 1018, vol. 2, of the Debates and Proceedings of the Constitutional Convention of the State of California (1878–1879), published at Sacramento in 1881 by the state office, J. D. Young, Superintendent State Printing. We can here give only a few excerpts, but they will be sufficient. Mr. Camples: "This term was discussed in the committee, and it was agreed, and I think with good reason, that the term was indistinct and indefinite. It may mean a

judicial district, or it may mean a congressional district, or some other district. * * *" Mr. McCallum: "The law now says that a party must be a resident of the district, which does not mean precinct. * * *" Mr. Reynolds: "There seems to be some obscurity in the language used in the present constitution, and also in the language of the report of the committee. I refer to the words 'county' and 'district'; and though there seems to be found no decision bearing on the question, from the discussion in this committee there seems to be some uncertainty as to how these words should be construed. I am in favor, in part, of the amendment offered by the gentleman from San Francisco, because I think it would tend to remove the obscurity. * * * If I could get a chance I would offer an amendment that would forever set at rest any question that might arise * * * and because the pending amendments will leave a little of this obscurity, is the reason why I shall vote against them." Mr. Larkin: "The word 'district,' as used in the old constitution, applied to the districts existing at the time, that then existed. Now, to use the word in this constitution might mean a railroad district. It might mean a senatorial district. * * *"

No member of the convention, so far as shown by the Debates and Proceedings, mentioned "township" as one of the meanings that might be given to or included within the meaning of "district." Mr. Larkin was the only one who had a definite idea as to the meaning of the word "district," as used in the right of suffrage article, and his idea, as appears above, was that the word referred to the districts existing at the time the old constitution was adopted (1849). We have read the California constitution of 1849, and we find mentioned there senatorial, assembly, congressional, and judicial districts. We also find a provision (article 11, sec. 13) that "assessors and collectors of town, county, and State taxes shall be elected by the qualified electors of the

*district,* county, or town in which the property taxed for State, county, or town purposes is situated." In the Nevada constitution mention is made of assembly, senatorial, and judicial districts. An amendment to section 3 of article 15 of our constitution, ratified by the people in 1912, provides that "females over the age of twenty-one years, who have resided in this state one year, and in the county and *district* six months next preceding any election to fill either of said offices, or the making of such appointment, shall be eligible to the office of superintendent of public instruction, deputy superintendent of public instruction, school trustee, and notary public."

Section 1 of the right of suffrage article (article 2) of the constitution of California, as now amended, requires residence in the state one year, in the county ninety days, and in the election precinct forty days. Section 159 of the Code of Civil Procedure of California, as amended to the present time (St. 1933, p. 1827), provides in part that "no person shall be eligible to the office of justice of the peace unless he shall have been a citizen of the United States and a resident of the county in which he is to serve for one year next preceding his election or appointment." It thus appears that while a person, to be a qualified elector in California, must be a resident of the election precinct for forty days, he is eligible for the office of justice of the peace if he is a resident of the county (not the township) in which he is to serve, for one year preceding his election.

The debates in the California constitutional convention of 1849 throw no light upon the meaning of the word we have been discussing.

The first words of section 8 of article 6 of our state constitution are "The legislature shall determine the number of justices of the peace to be elected in each city and township of the state." Nothing is here said about districts. We do find, however, in the 1861 Laws of the Territory of Nevada, c. 89, p. 295, the following:

"There shall be elected or appointed, as hereinafter declared, the following officers, to wit: * * * For each township, one justice of the peace, who shall be ex officio coroner in his district or township." Section 1.

Section 2466 N. C. L., being section 29 of the general election law, prescribes the method of canvassing the votes "when two or more counties are united in one senatorial, representative, or judicial district for the election of any officers."

Section 1 of the general election law of the Territory of Nevada (Laws of Nevada 1861, c. 94, p. 300) reads as follows: "That all white male inhabitants, over the age of twenty-one years, shall be entitled to vote at any election for delegate to congress, and for territorial, district, county and precinct officers; *provided,* that they shall be citizens of the United States, and shall have resided four months in the territory, and thirty days *in the county where they offer to vote,* next preceding the day of election." It will be noted that this section required residence only in the territory and county. Section 15 of the last-mentioned act reads as follows: "It shall be unlawful for any elector to vote for delegate to congress, at any place of holding an election within this territory; for members of the legislative assembly, and all other officers, at any place for holding elections within the particular limits for which such members of the legislative assembly, and such other officers, are to be elected; *provided,* that an elector qualified to vote for a part, and not all, of the officers to be chosen at any election, shall vote an open ticket, that the judges may determine the legality of such vote." In section 26 of the same act, mention is made of "unorganized counties." Section 31 provides that when a vacancy shall happen in the office of member of the council or house of representatives, "the governor shall issue a writ of election, directed to the sheriff of the county or *district* in which such vacancy shall happen, commanding him to notify the several judges in

his county or *district* to hold a special election to fill such vacancy."

In defining the residential requirements for electors, our constitution first prescribes residence in the state six months, then residence in the "district or county" thirty days, next preceding any election. The order in which the words "state," "district," and "county" are placed, while by no means conclusive, is some indication that "district" was not intended to include any subdivision of less extent than a county.

In Gray v. Board of Commissioners of Beadle County, 21 S. D. 97, 110 N. W. 36, at page 37, the court says: "The arrangement of the words 'state, district, county, township or precinct' indicates that the word 'district' was designed to designate a subdivision embracing more than one county."

In Saunders v. Haynes, 13 Cal. 145, at page 151, the court had under consideration a certain section of the general election law providing that no person should be competent to contest any election unless he is a qualified elector of the district, county, or township, in which the office is to be exercised. The court said: "The word 'district' here, evidently, from the collocation of the words, does not refer to any electoral divisions of a county or a township, but to such a division of the State."

It may be observed that in the very early days of California there were at least several kinds of districts which have never existed in the State of Nevada.

■ Even if the word "district," as used in said section 1, article 2 of our constitution, could be construed to include "township" within its meaning, petitioner was nevertheless a qualified elector under the constitution when he filed his nomination paper. Said constitutional provision, in itself, does not relate in any way to *eligibility* for office. It does nothing more than prescribe the qualifications of an *elector*. Section 3 of article 15 of the state constitution (section 164 N. C. L.)

and section 4766 N. C. L. go no further than to say that no person who is not a qualified elector shall be eligible to any office. By "qualified elector," as used in the last-mentioned constitutional provision and in said last-mentioned statute, is meant qualified elector under the provisions of section 1, article 2 of our constitution. Said section 3 of article 15 and said section 4766 N. C. L. do not, nor does either of them, place any residential limitations on the eligibility of candidates for the office of justice of the peace, further than those prescribed in section 1, article 2.

Petitioner did not become ineligible for the office of justice of the peace of Nelson County by changing his residence on August 24, 1936, from Las Vegas township to said Nelson township.

We are not to be understood as saying that there is no authority to support the contention that the word "district," as used in section 1 of article 2 of our state constitution, includes "township" within its meaning. In Olive v. State, 11 Neb. 1, 7 N. W. 444, at page 446, the court said: "In its ordinary meaning the word 'district' is commonly and properly used to designate any one of the various divisions or subdivisions into which the state is divided for political or other purposes, and may refer either to a congressional, judicial, senatorial, representative, school, or road district, depending always upon the connection in which it is used. In the clause quoted, very clearly it refers to neither of these, and, although not synonymous with the word 'county,' yet, by its connection with it, the intention evidently was that they should be taken in a similar sense and as designating the precise portion of territory, or division of the state, over which a court, at any particular sitting, may exercise power in criminal matters." The clause referred to by the court was one from the Nebraska Bill of Rights, declaring that "in all criminal trials the accused shall have the right to * * * a speedy public trial, by an impartial jury of

the county or district in which the offence is alleged to have been committed." The meaning of the word "district" was also considered by the supreme court of Montana in State v. O'Brien, 35 Mont. 482, 90 P. 514, at page 518, 10 Ann. Cas. 1006, in construing a clause of the Montana constitution identical with that in the Olive Case. In People v. Sackett, 351 Ill. 363, 184 N. E. 646, the Absentee Electors Law (Smith-Hurd Ill. Stats. c. 46, sec. 462 et seq.) was held to apply to "district" elections. After quoting from the Olive Case, supra, the court held that an election for the purpose of organizing and electing commissioners of a park district was a district election. In only one of the three cases just mentioned, State v. O'Brien, supra, was the court called upon to consider whether the word "district" meant "township," and it was held in that case that "district" did not mean "township."

██ On the hearing of respondent's demurrer to relator's petition herein, the contention was made that these proceedings had been prematurely brought, in that the respondent was not as yet actually in default. It is true, as a general rule, that there must have been an actual default in the performance of the duty sought to be coerced, that there can be no default before the time has arrived for the performance of the duty, and that mandamus will not issue in anticipation of an omission of such duty. State v. Public Service Comm. of Nevada, 44 Nev. 102, 190 P. 284; Nevada Tax Comm. v. Campbell, 36 Nev. 319, 135 P. 609; State v. Brodigan, 34 Nev. 486, 125 P. 699; Hardin v. Guthrie, 26 Nev. 246, 66 P. 744; State v. Gracey, 11 Nev. 223; Humboldt County v. Churchill County Com'rs., 6 Nev. 30; 38 C. J. 580, sec. 55. But in the proceeding at bar we have had to deal with a situation where mandamus was the only effective remedy available to petitioner. Respondent not only declined to cause petitioner's name to be printed on the ballots when demand was made by him, but further stated that he did not intend to do so.

There was but a limited time within which to have the ballots printed. If petitioner had waited until a later date to institute this proceeding, not only would a great deal of unnecessary expense, confusion, and delay have resulted, but it might have become a physical impossibility to have petitioner's name printed on the ballots. Section 2475 N. C. L. provides that the county clerk shall provide for each election precinct in the county at least 110 ballots for each 100 voters registered therein, but there seems to be no provision as to when the ballots must be printed. While recognizing, therefore, the general rule above mentioned, we are of the opinion that, under the special facts and circumstances of this case, the rule enunciated in the last sentence of said section 55 on page 581 of 38 C. J. should be followed. The rule there stated is that where the officer against whom the writ is demanded has refused performance in advance of the time fixed therefor and evinced a determination not to perform the act at all, mandamus proceedings will at once lie to compel performance at the proper time, if it is probable that no effective relief could otherwise be attained. While the point under discussion was not raised in State v. Beemer, 51 Nev. 192, 272 P. 656, this court in that case ordered the issuance of a peremptory writ of mandamus requiring the clerk of Washoe County to print the name of the petitioner on the official ballots for a general election.

We are not called upon to decide whether the word "district," as used in section 1 of article 2 of our constitution, may in a particular case mean a subdivision or district of less extent than a county. We decide only, under the rule announced in Ward v. Crowell, supra, that there is no constitutional or other legal provision in this state clearly requiring that petitioner, to be eligible for the office to which he aspired, must have been a resident of Nelson township at any time earlier than when he changed his residence from Las Vegas township to Nelson township. In arriving at this conclusion, we have not been influenced by any individual

opinions we might have as to what the law on this subject ought to be.  Our sole concern has been to ascertain, as best we could, the intention of the framers of the constitution.