141 P.3d 1235 (2006)
NEVADANS FOR THE PROTECTION OF PROPERTY RIGHTS, INC., a Nevada Corporation; Henderson Chamber of Commerce, a Nevada Non-Profit Corporation; Las Vegas Chamber of Commerce, a Nevada Non-Profit Corporation; Nevada Contractors Association, a Nevada Non-Profit Corporation; Associated General Contractors, a Nevada Non-Profit Corporation; Southern Nevada Homebuilders Association Inc., a Nevada Non-Profit Corporation; Nevadans for Nevada, a Nevada Non-Profit Corporation; Clark County, a Political Subdivision of the State of Nevada; Clark County Regional Flood Control District, a Regional Government Agency; Southern Nevada Water Authority, a Regional Government Agency; Las Vegas Valley Water District, a Regional Government Agency; Regional Transportation Commission of Southern Nevada, a Regional Government Agency; Sue Allen, an Individual; Judith Brailsford, an Individual; Jeff Codega, an Individual; Lisa Mayo Deriso, an Individual; M.J. Harvey, an Individual; John Hiatt, an Individual; Jon Mayer, an Individual; Terry Murphy, an Individual; John Restrepo, an Individual; Bruce L. Woodbury, an Individual; and the City of Boulder City, Appellants,
v.
Dean HELLER, in His Capacity as Secretary of State; People's Initiative to Stop the Taking of Our Land, an Un-Incorported Organization; Don Chairez, an Individual; Kermitt L. Waters, an Individual; and Autumn Lee Waters, an Individual, Respondents.
No. 47825.
Supreme Court of Nevada.
September 8, 2006.
Rehearing Denied September 18, 2006.
*1237 David R. Olsen, City Attorney, Boulder City, for Appellant City of Boulder City.
*1238 David J. Roger, District Attorney, Mary-Anne Miller, and E. Lee Thomson, Deputy District Attorneys, Clark County, for Appellants Clark County and Clark County Regional Flood Control District.
Charles K. Hauser and James L. Taylor, Las Vegas, for Appellants Las Vegas Valley Water Distribution and Southern Nevada Water Authority.
Zev E. Kaplan, Las Vegas, for Appellant Regional Transportation Commission of Southern Nevada.
Kummer Kaempfer Bonner & Renshaw, and Tami D. Cowden, Mark E. Ferrario, and Thomas F. Kummer, Las Vegas, for Appellants Nevadans for the Protection of Property Rights, Henderson Chamber of Commerce, Las Vegas Chamber of Commerce, Nevada Contractors Association, Associated General Contractors, Southern Nevada Homebuilder's Association, Nevadans for Nevada, Allen, Brailsford, Codega, Deriso, Harvey, Hiatt, Mayer, Murphy, Restrepo, Woodbury, and City of Boulder City.
George Chanos, Attorney General, and Joshua J. Hicks, Deputy Attorney General, Carson City, for Respondent Dean Heller, Secretary of State.
Hansen & Hansen, LLC, and Jonathan J. Hansen, Las Vegas, for Respondent People's Initiative To Stop The Taking of Our Land and Chairez.
Law Offices of Kermitt L. Waters and Autumn L. Waters and Kermitt L. Waters, Las Vegas, for Respondents Kermitt and Autumn Waters.
Kolesar & Leatham, Chtd., and Nile Leatham and James B. MacRobbie, Las Vegas, for Amicus Curiae Institute for Justice.
Before the Court En Banc.[1]

OPINION
DOUGLAS, J.
In this opinion, we consider the constitutionality of NRS 295.009, which places a single-subject requirement on initiative petitions, and whether the initiative petition at issue in this appeal, the Nevada Property Owners' Bill of Rights, violates that requirement. We conclude that NRS 295.009 is constitutional and that because the Nevada Property Owners' Bill of Rights embraces more than one subject, the initiative violates this statute. Even so, strong public policy favors upholding the initiative power whenever possible, and NRS 295.009 does not prescribe a remedy for single-subject requirement violations. As the initiative includes a severability clause and facially and unequivocally pertains to a primary subject  eminent domain  we are compelled to sever sections 1 and 8, which do not pertain to eminent domain, in lieu of removing the entire initiative from the ballot.
Further, we confirm that initiatives proposing constitutional amendments must propose policy and not direct administrative details. Sections 3, 9, and 10 of the initiative violate this threshold requirement and therefore must be stricken. The rest of the initiative, consisting of sections 2, 4, 5, 6, 7, 11, 12, 13 and 14 shall proceed to the ballot.

BACKGROUND
In September 2005, respondents People's Initiative to Stop the Taking of Our Land (PISTOL), Don Chairez, Kermitt Waters, and Autumn Waters (collectively "the proponents") filed an initiative petition entitled "Nevada Property Owners' Bill of Rights" with the Secretary of State for placement on the November 7, 2006 ballot. The initiative seeks to amend Article 1 of the Nevada Constitution by adding a new section, section 22, consisting of 14 separate provisions. The initiative's provisions are as follows:
1. All property rights are hereby declared to be fundamental constitutional rights and each and every right provided herein shall be self-executing.
2. Public use shall not include the direct or indirect transfer of any interest in property taken in an eminent domain proceeding from one private party to another private party. In all eminent domain actions, *1239 the government shall have the burden to prove public use.
3. Unpublished eminent domain judicial opinions or orders shall be null and void.
4. In all eminent domain actions, prior to the government's occupancy, a property owner shall be given copies of all appraisals by the government and shall be entitled, at the property owner's election, to a separate and distinct determination by a district court jury, as to whether the taking is actually for a public use.
5. If a public use is determined, the taken or damaged property shall be valued at its highest and best use without considering any future dedication requirements imposed by the government. If private property is taken for any proprietary governmental purpose, the property shall be valued at the use to which the government intends to put the property, if such use results in a higher value for the land taken.
6. In all eminent domain actions, just compensation shall be defined as that sum of money, necessary to place the property owner back in the same position, monetarily, without any governmental offsets, as if the property had never been taken. Just compensation shall include, but is not limited to, compounded interest and all reasonable costs and expenses actually incurred.
7. In all eminent domain actions where fair market value is applied, it shall be defined as the highest price the property would bring on the open market.
8. Government actions which result in substantial economic loss to private property shall require the payment of just compensation. Examples of such substantial economic loss include, but are not limited to, the down zoning of private property, the elimination of any access to private property, and limiting the use of private air space.
9. No Nevada state court judge or justice who has not been elected to a current term of office shall have the authority to issue any ruling in an eminent domain proceeding.
10. In all eminent domain actions, a property owner shall have the right to preempt [sic] one judge at the district court level and one justice at each appellate court level. Upon prior notice to all parties, the clerk of that court shall randomly select a currently elected district court judge to replace the judge or justice who was removed by preemption [sic].
11. Property taken in eminent domain shall automatically revert back to the original property owner upon repayment of the original purchase price, if the property is not used within five years for the original purpose stated by the government. The five years shall begin running from the date of the entry of the final order of condemnation.
12. A property owner shall not be liable to the government for attorney fees or costs in any eminent domain action.
13. For all provisions contained in this section, government shall be defined as the State of Nevada, it political subdivisions, agencies, any public or private agent acting on their behalf, and any public or private entity that has the power of eminent domain.
14. Any provision contained in this section shall be deemed a separate and freestanding right and shall remain in full force and effect should any other provision contained in this section be stricken for any reason.
After the necessary signatures were gathered and verified, the Secretary of State determined that the initiative had qualified for placement on the November 2006 ballot. In reviewing the initiative, the Secretary was required to determine whether it complied with Nevada's single-subject requirement, NRS 295.009.[2] The Secretary conducted a "broad" review and concluded, apparently without any analysis, that the initiative "arguably complied with the single subject rule." Appellants, a collection of individuals and government entities opposed to the initiative, then filed a complaint in district court seeking declaratory and extraordinary relief to prevent the initiative from being placed on *1240 the ballot. The district court denied all requested relief, ruling that the initiative encompasses only a single subject and is therefore not disqualified from appearing on the ballot. This appeal followed.

DISCUSSION
NRS 295.009, Nevada's recently enacted single-subject requirement for initiatives, is the focal point in this appeal. As the statute's constitutionality has been called into question, we first address this threshold issue. We then discuss the statute's application to the initiative at hand and the remedy, in this case, for a statutory violation. Finally, we analyze the initiative under the threshold requirement that it propose policy.

A. Standard of Review

This court reviews a district court's decision denying declaratory relief made in the absence of any factual dispute de novo.[3] And although this court generally reviews a district court's denial of a request for extraordinary relief under an abuse of discretion standard,[4] when the petition involves questions of statutory construction, including the meaning and scope of a statute, we review the resolution of those questions de novo.[5]

B. NRS 295.009's single-subject requirement is constitutional

During the 2005 legislative session, the Legislature enacted NRS 295.009, which, among other things, places a single-subject requirement on initiative petitions. Subsection (1)(a) of the statute provides that "[e]ach petition for initiative ... must ... [e]mbrace but one subject and matters necessarily connected therewith and pertaining thereto." Subsection 2 further defines what one subject encompasses.
The proponents challenge the constitutionality of NRS 295.009, under both the Nevada and United States Constitutions. They contend that the Nevada Constitution does not provide the Legislature with the authority to enact a law restricting ballot initiatives to a single subject and that the single-subject requirement places improper limitations on political speech in violation of the First Amendment of the United States Constitution. We conclude that the Legislature properly enacted NRS 295.009 and that since the statute does not place unconstitutional limits on political speech, it does not violate the First Amendment.

1. Nevada Constitution

Nevada Constitution Article 19, Section 2 provides that "the people" reserve unto themselves the power to propose and enact statutes, amendments to statutes, and amendments to the Nevada Constitution by initiative petition. Article 19, Section 5, however, provides that "the legislature may provide by law for procedures to facilitate the operation of [Article 19's provisions]." Thus, the Nevada Constitution explicitly authorizes the Legislature to enact laws regulating the initiative process, so long as those laws facilitate the provisions of Article 19. The proponents fail to address or acknowledge Article 19, Section 5 and its express grant of authority to the Legislature.
By limiting petitions to a single subject, NRS 295.009 facilitates the initiative process by preventing petition drafters from circulating confusing petitions that address multiple subjects. This goal was endorsed by the Tenth Circuit Court of Appeals in evaluating the constitutionality of Colorado's single-subject requirement in Campbell v. Buckley.[6] As the Campbell court noted, "single subject ... requirements serve to prevent voter confusion and promote informed decisions by narrowing the initiative *1241 to a single matter and providing information on that single matter to the voter."[7] The Campbell court concluded that single-subject requirements for initiative petitions do not impermissibly limit the people's ability to legislate or amend the constitution, noting that a second subject that might have been included in the first petition can be addressed by creating a second petition.[8] And, although the United States Supreme Court has not addressed the constitutionality of single-subject requirements, in an opinion addressing the constitutionality of several Colorado statutes regulating the initiative process, the Court, in dictum, classified Colorado's single-subject requirement as a "process measure[]" that facilitates "efficiency, veracity, or clarity" in the initiative process.[9]
NRS 295.009's single-subject requirement facilitates the provisions of Article 19. Accordingly, under Article 19, Section 5, the Legislature had the authority to enact this requirement for initiative petitions.[10] The challenge to this statute's constitutionality under the Nevada Constitution therefore necessarily fails.[11]

2. United States Constitution

The proponents also contend that the single-subject requirement places an unconstitutional limitation on core political speech, under the First Amendment of the United States Constitution, requiring a strict scrutiny analysis. Instead, however, a more flexible balancing test applies, and under this test, the single-subject requirement does not run afoul of the First Amendment.

a. The constitutionality of the single-subject requirement must be evaluated under the flexible balancing test, not strict scrutiny

In Burdick v. Takushi,[12] the Supreme Court expressly rejected the contention that any law imposing a burden on the right to vote is subject to strict scrutiny. In upholding Hawaii's ban on voting for write-in candidates against arguments that the ban violated the First and Fourteenth Amendments, the Court held that a more flexible standard, rather than strict scrutiny should be applied.[13]
Under this flexible standard, a court considering a challenge to a state election law must balance the character and magnitude of the asserted injury to the protected right the challenger seeks to vindicate against the precise interests advanced by the state as justifying the burden imposed by its rule, while taking into consideration the extent that those interests require the burdening of the challenger's rights.[14] The rigorousness of the inquiry into the challenged law's propriety depends on the extent to which the law burdens First and Fourteenth Amendment rights.[15] When these rights are severely *1242 restricted, the regulation must be narrowly drawn so as to advance a compelling state interest.[16] When a state election law imposes only reasonable, nondiscriminatory restrictions on these rights, the state's important regulatory interests are generally sufficient to justify the restrictions.[17]
We have adopted this flexible standard in reviewing a statute that limited the time for circulating recall petitions.[18] And, in Campbell, the Tenth Circuit determined that the more flexible balancing test applied to a constitutional provision limiting initiatives to a single subject.[19] The Campbell court differentiated between situations in which the overall quantum of speech is reduced,[20] which requires a strict scrutiny analysis, and situations involving nondiscriminatory regulations of the voting process that do not place direct limitations on the quantity of speech available, to which the more flexible balancing test applies.[21] Applying this analysis to Colorado's single-subject requirement, the Campbell court concluded that the requirement was facially neutral and that it did not place a direct limitation on the quantity of speech available.[22] "If anything," the court noted, "requiring proponents to pursue separate initiatives on separate subjects might encourage more speech on each such subject."[23] Thus, the Campbell court concluded that the flexible balancing test and not strict scrutiny provided the appropriate mechanism for analyzing Colorado's single-subject requirement.[24]
Similarly, NRS 295.009's single-subject requirement does not restrict the overall quantum of speech or otherwise inhibit communication with voters about proposed political change. The single-subject requirement is facially neutral and represents a reasonable, nondiscriminatory restriction.[25] Accordingly, this court will apply the balancing test and not strict scrutiny in analyzing the constitutionality of NRS 295.009's single-subject requirement.

b. The single-subject requirement does not violate the First Amendment

In applying the balancing test, the Campbell court noted that the single-subject requirement "serve[s] to prevent voter confusion and promote informed decisions by narrowing the initiative to a single matter and providing information on that single matter to the voter."[26] The Campbell court further noted that the single-subject rule prevents petitioners from gaining passage of provisions that would not otherwise become law by attaching them to more popular proposals or concealing them in a long and complex initiative.[27] These interests, the court concluded, were sufficiently important to justify the single-subject requirement.[28] The court further noted that no evidence suggested that the test was being applied in a manner that discriminated against the initiative proponents based on the content of their petition.[29] Thus, the court concluded that the *1243 Colorado single-subject limitation was constitutionally valid.
Like the provision at issue in Campbell, Nevada's single-subject requirement does not prevent petitioners from addressing multiple subjects and thereby restrict the quantum of speech. It simply requires petitioners to address separate subjects in separate petitions. Moreover, the rule is nondiscriminatory, as it does not limit the subject matter of petitions in general; it merely limits petitioners to addressing one subject per petition. Thus, the application of the single-subject requirement does not discriminate against the proponents based on the content of their initiative. Nevada also has a number of important interests in the single-subject rule. These interests mirror the interests cited in Campbell, including preventing the public from being confronted with confusing or misleading petitions and preventing proposals that would not otherwise become law from being passed solely because they are attached to more popular measures.[30]
We agree with the Tenth Circuit that these types of interests are significant and justify a single-subject requirement. Even though circulating more than one petition may increase costs for the proponents, circulating multiple petitions, as noted in Campbell, likely fosters speech. The Eleventh Circuit Court of Appeals has explained, in applying Florida's single-subject rule, that "the Constitution does not require [a state] to structure its initiative process in the most efficient, user-friendly way possible."[31] The single-subject requirement is designed to assist voters in determining whether to change the laws of Nevada and the structure of government and ultimately protects the sanctity of Nevada's election process. Accordingly, we conclude that NRS 295.009's single-subject requirement does not violate the First Amendment, as applied to the states through the Fourteenth Amendment, and is thus constitutionally valid.

C. The initiative fails to satisfy the single-subject requirement

NRS 295.009(1)(a) provides that "[e]ach petition for initiative or referendum must . . . [e]mbrace but one subject and matters necessarily connected therewith and pertaining thereto." Subsection 2 of the statute further defines the "one subject" requirement set forth in subsection (1)(a):
For the purposes of paragraph (a) of subsection 1, a petition for initiative or referendum embraces but one subject and matters necessarily connected therewith and pertaining thereto, if the parts of the proposed initiative or referendum are functionally related and germane to each other in a way that provides sufficient notice of the general subject of, and of the interests likely to be affected by, the proposed initiative or referendum.
NRS 295.009 plainly sets forth the standard to be applied in determining whether an initiative petition encompasses more than one subject. Specifically, each petition must embrace only one subject and matters necessarily connected with and pertaining to that subject, so that "the parts of the proposed initiative ... are functionally related and germane to each other in a way that provides sufficient notice of the general subject of, and of the interests likely to be affected by, the proposed initiative or referendum."[32]
Our preliminary inquiry, then, is whether the initiative's parts are "functionally related" and "germane" to each other. Here, in considering the arguments made by the proponents' counsel and examining the text of the initiative on its face, we may determine what the initiative's overall subject is.
Although the proponents' attorneys have not been entirely consistent, in either their briefs or during oral argument they have essentially admitted that the initiative originated as a response to the United States Supreme Court's recent decision in Kelo v. City of New London, Connecticut,[33] which *1244 concluded that the taking of private property for private development in the context of a redevelopment scheme constituted public use. Indeed, the proponents' briefs point to the Kelo majority's statement that "State[s are not precluded] from placing further restrictions on [their] exercise of the takings power"[34] and indicate that the initiative, if enacted, "will do just that." The proponents' attorneys also indicate that the initiative, especially section 2, is designed to prevent the taking of private property by the government through eminent domain for the purposes of transferring that property to a private party.
Proponents' attorneys have also explained, however, that the initiative's provisions go further than simply addressing Kelo. At argument, counsel agreed that the initiative is "Kelo plus." In fact, counsel made it clear that, with respect to the initiative, "Kelo is the tip of the iceberg." And, in their briefs, the proponents' attorneys repeatedly state that the initiative concerns eminent domain. The initiative itself unequivocally sustains these statements, as the vast majority of its provisions address one subject  eminent domain. Indeed, the description of the initiative's effect specifically states that "[t]he following constitutional provisions shall supersede all conflicting Nevada law regarding eminent domain actions." Thus, the primary subject of the initiative is unquestionably eminent domain, with its genesis the Supreme Court's Kelo decision. Because each and every provision in the initiative must be "functionally related" and "germane" to one another, it follows that, with respect to this initiative, every provision must be "functionally related" and "germane" to the subject of eminent domain.
Our review of the initiative reveals, however, that, despite the proponents' contentions, not all of the initiative's provisions are "functionally related" and "germane" to the subject of eminent domain. Specifically, we conclude that section 1 and section 8 of the initiative fail to satisfy this requirement. Under section 1, "[a]ll property rights are hereby declared to be fundamental constitutional rights and each and every right provided herein shall be self-executing." Although the proponents insist that this section is "functionally related" and "germane" to the subject of eminent domain because it would require the application of a strict scrutiny standard when property is taken, we disagree.[35] This section is about making all property rights fundamental rights, and thereby creating a broad new class of fundamental rights. It does not deal with the subject of eminent domain. Further, this section's inclusion in an initiative dealing with eminent domain does not provide sufficient notice of the subject addressed in section 1 or the interests likely to be affected by this section.
Section 8 addresses government actions that cause substantial economic loss to property rights. Specifically, section 8 provides that "government actions which result in substantial economic loss to private property shall require the payment of just compensation." This section further provides that "[e]xamples of such substantial economic loss include, but are not limited to, the down zoning of private property, the elimination of any access to private property, and limiting the use of private air space." As a result, this section is extremely broad and concerns any government action that causes substantial economic loss. Although this section would, as the proponents contend, apply to many inverse condemnation cases, which this court has held to be the "constitutional equivalent to eminent domain,"[36] it would also apply to myriad other government actions that do not fall even within the most broad *1245 definition of eminent domain. As the opponents point out, this provision would require payment of just compensation for, among other things, public construction projects that cause a decrease in business or value while the construction work is ongoing, the creation of new public transportation routes or modification of existing routes when the change negatively impacts property values, and situations in which a zoning change request or special use permit is denied and the party requesting the change or permit would have seen a substantial increase in property value had the request been approved.[37]
To the extent that section 8 would require payment of just compensation for all of the aforementioned government actions if the actions caused substantial economic loss to private property, that section far exceeds the scope of what could, even under an extremely liberal definition, be classified as eminent domain. "Government actions" related to construction projects, public transportation routes, and the denial of requested zoning changes or special use permits are in no way "functionally related" or "germane" to eminent domain, and this section clearly fails to provide sufficient notice of the wide array of subjects addressed in section 8 or the interests likely to be affected by it. Because of the far-reaching impact of this section on government actions completely unrelated to eminent domain, the fact that this section will also affect inverse condemnation is insufficient to render section 8 functionally related or germane to eminent domain. The proponents could easily have phrased section 8 in a way that limited its impact to eminent domain, but instead, they chose to use expansive language addressing government actions far beyond the scope of this subject.
Accordingly, we conclude that although the initiative addresses a primary subject, eminent domain, it embraces more than one subject in light of sections 1 and 8. Because the initiative encompasses more than one subject, it violates NRS 295.009's single-subject requirement. We therefore must determine the appropriate remedy for this violation.

D. The initiative must be severed to preserve the people's will

The opponents argue that the initiative should be wholly stricken from the ballot. The proponents, on the other hand, assert that the initiative should be severed and preserved, in major part, for the voters' consideration. For four reasons, severance and preservation is appropriate in this case.
First, and foremost, under the unique circumstances of this case, the initiative, even though it violates the single-subject requirement, is severable, as its primary subject is readily discernable. As discussed above, the vast majority of the initiative's provisions  twelve of fourteen  address eminent domain. Additionally, the proponents have repeatedly stated that the initiative concerns eminent domain. Thus, because the initiative has a single primary subject, it is amenable to severance; the two unrelated sections, 1 and 8, can simply be omitted from the rest of the initiative, so that it may proceed as an eminent domain initiative.
Second, the initiative's section 14 contains a severability clause, which provides that "[a]ny provision contained in this section shall be deemed a separate and freestanding right and shall remain in full force and effect should any other provision contained in this section be stricken for any reason." Thus, the initiative petition's signers have expressed a desire to allow the initiative to proceed even without some sections, and, in severing, this court need not speculate whether the signatories would have signed the petition in its severed form.
Third, NRS 295.009 does not prescribe a remedy for violations of the single-subject *1246 requirement. In the absence of a legislative mandate that all violations of the single-subject requirement result in an initiative's disqualification from the ballot, severance is permissible. Severance is routinely employed by courts to address single-subject violations after legislative enactments.[38] Unlike Nevada, most other states' single-subject requirements are included in their constitutions.[39] Because Nevada derives its single-subject requirement from a statute, as opposed to the Constitution, we are not constitutionally mandated to strike the initiative from the ballot.[40]
Additionally, when the single-subject requirement was first proposed in the form of S.B. 224, the accompanying Legislative Counsel's Digest indicated that the measure required that petitions contain only one subject matter and matters properly related thereto, which had to be clearly expressed in the petition's title.[41] It went on to state, "Petitions violating these requirements are declared void."[42] The actual language of the proposal, with regard to initiatives, required that petitions embrace only one subject and, "[i]n all cases where the subject of the act or resolution is not so expressed in the title, the act or resolution is void as to the matter not expressed in the title."[43]
After the Senate passed the proposal, the Assembly passed a significantly amended version, which revised the language of that provision in a manner eliminating any reference to void petitions, more like that which is now used.[44] The amended version was very similar to a separate bill that had been proposed in the Assembly.[45] The Senate did not concur with the Assembly's amendments, however, and S.B. 224 was referred to a joint committee.[46] The joint committee generally kept the amended language in the provision at issue, further changing it mainly to eliminate reference to the petition's title. That version was ultimately passed.[47] No legislative minutes describe why the original provision was changed as to the one subject issue, or why the "void" language was removed.
Thus, the only evidence of legislative intent regarding a remedy for violations of the single-subject requirement is that violations do not automatically render an initiative void.[48] *1247 We therefore exercise our power to sever the initiative's provisions that concern secondary subjects, since the remaining provisions, pertaining to the primary subject (eminent domain) satisfy the following conditions: "(1) the provisions have legal effect, and (2) it appears the [voters] intended the provisions to stand alone even if another section in the same [initiative] is held invalid."[49] Here, the sections related to eminent domain are not impacted by severing sections 1 and 8, and the voters intended for these sections to stand alone if necessary.
Fourth, and significantly, our Constitution reserves to the people the initiative power.[50] Although the Legislature has the power to enact laws to facilitate the operation of the initiative process,[51] which includes enacting a single-subject requirement for initiative petitions, this court, in interpreting and applying such laws, must make every effort to sustain and preserve the people's constitutional right to amend their constitution through the initiative process. In this instance, because the Legislature has provided no specific remedy, striking the entire initiative, instead of severing the offending sections and allowing the remaining initiative to be placed on the November ballot, would run counter to the people's right to express their will through the initiative process. We have recognized that "the right to initiate change in this state's laws through ballot proposals is one of the basic powers enumerated in this state's constitution."[52]
And, although the dissent asserts that our decision to sever is inconsistent with this court's prior decision in Rogers v. Heller,[53] our decision in no way affects our conclusion to not intervene in Rogers. In Rogers, the validity of the initiative rested on a threshold funding requirement under Nevada Constitution, Article 19, Section 6, which required strict adherence.[54] Thus, we declined to sever the impermissible provision, as it was clearly unconstitutional. Additionally severing the initiative for lack of an appropriation mechanism would have gutted the initiative's central component: that the Legislature appropriate and spend a specific amount for public education in all future budget biennia.[55] No other portion of the initiative could have stood in the absence of this central component. We agree that an initiative that does not meet a threshold constitutional requirement is not subject to judicial severance for the reasons stated in Rogers and cited by the dissent. However, in the present case, unlike the situation in Rogers, we are not faced with a challenge to a constitutional requirement; rather, we must interpret a recently enacted single-subject statute. The initiative can also be kept substantively intact by severing sections 1 and 8.
*1248 For all of these reasons, we conclude that sections 1 and 8 should be severed from the initiative in light of the single-subject violation. Severance eliminates the "Hobson's choice" described by our dissenting colleagues. We also note that the proponents remain free to circulate, in the future, one or more initiative petitions concerning the severed sections.

E. Initiative petitions must contain legislative, or policy proposals, and certain of the initiative's provisions violate this threshold requirement

In Citizens for Train Trench Vote v. Reno,[56] this court broadly stated that "regardless whether an initiative proposes enactment of a new statute or ordinance, or a new provision in the constitution or city charter, or an amendment to any of these types of laws, it must propose policy  it may not dictate administrative details." Similarly, in Garvin v. District Court, we reaffirmed that "the initiative and referendum powers reserved to the people, although broad, are limited to legislation and do not extend to administrative matters."[57] Although the initiative's proponents correctly note that the administrative/legislative distinction has as its genesis local government initiatives, since local government bodies perform both administrative and legislative functions,[58] the proponents fail to recognize the point of this distinction's existence and the requirement that all proposed laws be policy oriented.
The very existence of the administrative/legislative distinction rests on the dual function of local government bodies. Unlike the Legislature, which performs strictly legislative functions, a local government body performs administrative functions as well. Consequently, although Article 19, Section 4, pertaining to local government initiatives, includes "legislation" language to clarify that the people are not permitted to interfere with local government's administrative functions, Article 19, Section 2, which governs initiatives concerning statutes and amendments to the Constitution, does not need to include any "legislation" language.
Outside of the initiative power, statutes and constitutional amendments are proposed by the Legislature, a non-administrative body. In Nevada, as in most states, we have an administrative code, which governs administrative issues and is created not by the Legislature but by entities with rule-making authority, which fill in administrative details pertaining to the policy articulated in legislation. The people's initiative power is "coequal, coextensive, and concurrent" with that of the Legislature;[59] thus, the people have power that is legislative in nature. That the people have only legislative power, by definition, explains why Article 19, Section 2 does not include any "legislation" language  it would be redundant.
By concluding that our Constitution may include administrative, non-policy matters, we would defy the very nature of the Constitution itself. As courts have recognized, "[t]he written constitution in this nation has always enjoyed a status superior to legislative enactments and has been variously portrayed as `original legislation,' `organic law,' or `fundamental law.'"[60] One court in *1249 particular has explained that a state constitution is basically legislation that the people enact directly:
"A state constitution may aptly be likened to a legislative act enacted directly by the people themselves in their sovereign capacity as a political entity ... and therefore is the fundamental, extraordinary act by which the people establish the structure and mechanism of their government. Essentially, a constitution is fundamental legislation directly by the people acting politically in their sovereign capacity...."[61]
We have also determined that the Constitution "has been very properly defined to be a legislative act of the people themselves in their sovereign capacity."[62] Consequently, as we recognized in Train Trench, an initiative intending to amend our Constitution "must propose policy  it may not dictate administrative details."[63] Including administrative details in the Constitution would impermissibly ignore its very definition as "original legislation" and would effectively turn on its head the fundamental concept of the Constitution as organic law. Initiatives proposing constitutional amendments therefore must propose policy and not administrative details, and we have recognized that preelection intervention is warranted when an initiative fails to meet the threshold requirement that it propose policy.[64]
We now turn to the initiative's remaining sections. As set forth in Train Trench, legislation "originates or enacts a permanent law or lays down a rule of conduct or course of policy for the guidance of the citizens or their officers," whereas impermissible administrative matters simply "put into execution previously-declared policies or previously-enacted laws or direct[] a decision that has been delegated to [a governmental body with that authority]."[65]
Here, most of the initiative's remaining provisions appear to dictate policy, as they at least arguably pertain to substantive changes in eminent domain law. Three of the initiative's provisions, however  sections 3, 9, and 10  dictate administrative details in clear contravention of the threshold requirement, as these rule making decisions have been delegated to a governmental body with that authority  the courts. In particular, the initiative's section 3 states that "[u]npublished eminent domain judicial opinions or orders shall be null and void." Section 9 declares that "[n]o Nevada state court judge or justice who has not been elected to a current term of office shall have the authority to issue any ruling in an eminent domain proceeding." And finally, section 10 provides that "[i]n all eminent domain actions, a property owner shall have the right to preempt [sic] one judge at the district court level and one justice at each appellate court level. Upon prior notice to all parties, the clerk of that court shall randomly select a currently elected district court judge to replace the judge or justice who was removed by preemption [sic]."
These provisions concern the day-to-day operations of Nevada's court system and therefore direct decisions that have been delegated to the judiciary.[66] They do not *1250 propose policy but instead are distinctly administrative; consequently, they must be stricken.

F. The opponents' equal protection argument will not be considered

In addition to the arguments addressed above, the opponents argue that if enacted, the initiative would violate the Fourteenth Amendment's Equal Protection Clause. As we recently explained in Herbst Gaming, Inc. v. Secretary of State,[67] however, challenges to an initiative's substantive validity will not be considered as part of this court's preelection review of an initiative. Such challenges are not ripe until an initiative becomes law.[68] Accordingly, as in Herbst, we decline to address the opponents' equal protection challenge.[69] We note that nonetheless, the opponents are not without a judicial remedy, since, if the initiative passes, challenges to the substantive validity of the proposed amendment can be made after it becomes law.[70]

CONCLUSION
The single-subject requirement contained in NRS 295.009 was properly enacted and does not run afoul of the First Amendment. In this case, the initiative violates the single-subject requirement because it includes two provisions that are not functionally related or germane to eminent domain. Additionally, three provisions violate the threshold prerequisite that initiatives propose policy. We decline, however, to remove the entire initiative from the ballot. Instead, we are compelled, under the unique circumstances of this case, to sever the portions of the initiative that pertain to secondary subjects and to strike the provisions that dictate administrative details. Accordingly, sections 1 and 8, shall be severed from the initiative, and sections 3, 9, and 10, shall be stricken. Sections 2, 4, 5, 6, 7, 11, 12, 13 and 14 may proceed to the November 2006 ballot. In this, we affirm in part and reverse in part the district court's order.[71]
MAUPIN, J., concurring and dissenting.
I agree with the majority that the single-subject requirement of NRS 295.009 is not constitutionally infirm. I also agree that the initiative petition here violates NRS 295.009 because it contains multiple provisions "functionally related and germane" to more than one subject. I disagree, however, with the majority's remedy for this statutory violation. Thus, I have determined to join Justice Hardesty's dissent with regard to the remedy afforded and agree with him that we should order the petition removed from the November ballot. I write separately to note my views concerning the scope of NRS 295.009 and how it was violated in this instance.
NRS 295.009, adopted last year by the Nevada Legislature, provides as follows:
1. Each petition for initiative or referendum must:

*1251 (a) Embrace but one subject and matters necessarily connected therewith and pertaining thereto; and
(b) Set forth, in not more than 200 words, a description of the effect of the initiative or referendum if the initiative or referendum is approved by the voters. The description must appear on each signature page of the petition.
2. For the purposes of paragraph (a) of subsection 1, a petition for initiative or referendum embraces but one subject and matters necessarily connected therewith and pertaining thereto, if the parts of the proposed initiative or referendum are functionally related and germane to each other in a way that provides sufficient notice of the general subject of, and of the interests likely to be affected by, the proposed initiative or referendum.
When the text of a statute is plain and unambiguous, a court should impart it with ordinary meaning and not go beyond that meaning.[1] If a statute is ambiguous, meaning that it is susceptible to differing reasonable interpretations, "the statute should be construed consistently with what reason and public policy would indicate the Legislature intended."[2] Going further, we must construe ambiguous statutes so as to avoid absurd results.[3] Having determined that NRS 295.009 is constitutional, we must construe it in accord with the stated principles of statutory interpretation.
In my view, this statute suffers from a degree of ambiguity in its basic application  the term "one subject" is inescapably susceptible of broad or narrow scope. Quite predictably then, neither the Secretary of State nor the district court engaged in any comprehensive attempt at determining the scope of the "single subject" rule. It is understandable that this has occurred because both could reasonably conclude that this court would be the final arbiter of the issue and because, in truth, it appears that the Legislature intended that the rule be generally stated. Thus, we are compelled to define the term by episodic inclusion and exclusion in a manner consistent with that intent.
The clear purpose of NRS 295.009 is to provide guidance and structure so that persons seeking to change the basic precepts of state governance may draft constitutional initiatives that are readily understandable and do not require the petition signators and voters to engage in "logrolling," i.e., signing or voting for a multifaceted petition in order to effect at least one element of change. While the scope of the limitation as drafted by the Legislature is not a model of specificity, we should assess the People's Initiative to Stop the Taking of Our Land (PISTOL) with these principles in mind.
The authors of the PISTOL petition quite candidly admit that a primary impetus for their initiative is to prevent state and local governments in Nevada from using eminent domain powers to take private property for the purpose of ultimate transfer to other private parties for neighborhood redevelopment, as the United States Supreme Court sanctioned in Kelo v. New London, Connecticut.[4] In their descriptive of the petition as "Kelo Plus," they also admit that the petition involves at least two subjects. In fact, beyond the attempt to prevent Kelo-type takings, they have included several additional measures encompassing other subject matters: to address real or perceived inequities in Nevada statutory and common law concerning eminent domain; to create a new and completely different cause of action for owners of real estate who sustain "substantial damages" from local or state government *1252 action such as "down zoning" or public construction; to create a new and completely different cause of action for owners of personal property who sustain "substantial damages" from local or state government action;[5] and to create special judicial procedures discrete to eminent domain actions. In this, the drafters of the multifaceted PISTOL petition have carefully added myriad additional features to ride the coattails of a very meaningful and salutory movement to restrict the powers of government to take private property for eventual transfer to other private interests. In short, the signatories to this petition were forced to vote for the other measures in order to achieve the protection they sought from the ruling in the Kelo case. And, conversely, it is quite arguable that the non-Kelo provisions were inserted because of a legitimate concern that they would fail on their own. This is exactly the type of logrolling that NRS 295.009 was meant to prevent.
All of the clearly separate subjects embraced within the PISTOL petition have dramatically differing ramifications and all require that the signators and prospective voters accept the entirety of the petition in order to obtain any of the proposed changes to the Nevada Constitution. Accordingly, this multifaceted petition runs afoul of the statutory command.
Unfortunately, when a petition violates the single-subject statute, enforcement of necessity requires some degree of nullification. Accordingly, while the signators here intended that the entire petition be placed before the voters, that intent does not end the matter. Again, this statute places a constraint that the sponsors and signators must follow and we must enforce.
The petitioners argue that the PISTOL petition deals with one general subject, eminent domain. As stated, no member of this tribunal agrees on that score because any rule supporting such a broad interpretation would render meaningless the statute's attempt to limit the scope of individual proposed amendments to the State Constitution. Again, the Kelo-portion of the petition separately embraces one subject because it alone defines government action that cannot qualify as eminent domain; and the remaining portions, Kelo Plus, further embrace a number of additional separate subjects. None of the groupings identified above are "necessarily connected" to any of the others.
Interestingly, while the court is unanimous in its conclusion that PISTOL violates NRS 295.009, there is no solid consensus as to a remedy or a sanction for noncompliance  a component that is patently missing from the statute. No wonder the Secretary of State eschewed any real attempt at enforcing this measure. But the Legislature could not possibly have intended to pass a law with the contradictory intent that no enforcement by either the executive or judicial branches would be forthcoming. Thus, we must provide a remedy that best reflects the legislative purpose behind the single-subject rule  to provide clarity and certainty and to minimize so-called "Hobson's choices" for signators and voters.
Four permutations are available: do nothing and leave the entire matter on the ballot as is; break the measure out into separate ballot measures by redrafting them into separate sections so that all of the elements remain on the ballot; strike secondary portions not essential to the primary thrust of the measure; or strike the petition in its entirety from the ballot.
The first alternative is clearly unavailable because it fails in any respect to remedy or sanction the violation. Again, it would be absurd to conclude that the Legislature went to the trouble of passing this statute without a remedy or sanction for violations of it. The second alternative, redrafting the measure into component parts and leaving all of them on the ballot, is equally problematic as a matter of general application. In this case, as well as in all future cases based upon the precedent set in this matter, we would have to divine groupings ourselves on a subjective basis, groupings which are not always susceptible *1253 of clear demarcation. Going further, the second alternative would reward the sponsors for forcing the signators to engage in logrolling to obtain protection from Kelo, and would encourage future sponsors to attach less attractive measures to more popular ones.
The majority today elects the third approach. It has itself divined primary and secondary portions of the petition and stricken the secondary measures. But the application of a primary-secondary line of analysis ignores the petitioners' admission at the oral argument of this appeal that the petition is "KELO PLUS." Under this construct, they should strike everything from the ballot except section two, the actual Kelo petition. But, as Justice Hardesty has noted, even this construct contorts NRS 295.009. Thus, while complete removal of the matter from the ballot is the harshest of all the results, it is the most solid legally under Rogers v. Heller.[6]
Finally, as noted by Justice Hardesty:
The majority, by creating this remedy of severing and striking portions of an initiative, has set a dangerous precedent for the future review of initiative petitions. Nevada courts are now empowered to sever and strike provisions that violate the single-subject requirement, not because those provisions are unconstitutional or unenforceable, but simply because the court determines that the offending provisions fall outside the court's conjecture of what single-subject the petition is [primarily] attempting to promote.... Such discretion,... allows the courts to employ pure "judicial surgery" in severing a petition, ... creates an unworkable test for future cases and gives the courts unfettered freedom to tamper with the people's constitutional prerogative.
While striking the measure seems harsh in the short term, the remedy Justice Hardesty and I now suggest provides the most certainty for future initiative proponents in the long run. The majority ruling today mandates, without any definitive standard, biannual judicial interference in the initiative process. Our solution limits the use of judicial discretion such as applied here, which can never truly and accurately reflect the will of petition signators and, ultimately, the voters. In short, the majority holding today requires ad hoc decision making by judges concerning the subjective intent of initiative proponents.
It would be inviting to permit the electorate to vote on the Kelo portion of the petition and simply strike the rest. But that would not settle the overriding question here: what standard should we use to strike or not strike? While a ruling taking an expedient course seems fair today, it would set a trap for deciding the validity of future ballot initiatives under NRS 295.009. We should adopt a rule that gives absolute and clear guidance to proponents of measures such as PISTOL. The majority ruling today does nothing of the kind, inevitably leading to unwarranted mystification of petition proponents and the electorate alike, particularly those interested and committed enough to attempt constitutional change.
HARDESTY, J., concurring in part and dissenting in part.
The majority concludes that the single-subject requirement embodied in NRS 295.009 does not violate the Nevada or federal constitutions, and that, by its plain language, the requirement limits initiative and referendum provisions to those that are "functionally related and germane" to the petition's general subject. The majority further concludes that the initiative at issue in this case, the Nevada Property Owners' Bill of Rights, impermissibly contains provisions functionally related and germane to more than one subject. With these conclusions, I concur. But with regard to the majority's view that, as a consequence of the single-subject requirement violation, this court can and should sever and strike certain provisions from this initiative, I dissent.
*1254 As the majority recognizes, the single-subject requirement has been implemented in several states and was essentially designed to help facilitate the people's legislative process by promoting informed decisions and preventing the confusion, and in some cases, deception, that results when certain less-popular provisions are "log-rolled" into a petition proposing an idea that the public generally favors.[1] By limiting initiative and referendum petitions to one subject, the requirement allows petition signers and voters to separately consider each different proposal, and the potential effects of that proposal, before deciding whether to sign the petition or vote for or against the proposal.
Further, the requirement prevents "log-rolling," which occurs when two or more completely separate provisions are combined in a petition, one or both of which would not obtain enough votes to pass without the other. Generally, to "log-roll" a provision into enactment, the proponent advances a proposition that the proponent expects would pass constitutional muster and be easily enacted by the voters, but then adds to the petition a provision, often "hidden" deep within, that is less popular. For instance, a group might attempt to appeal to a majority of Nevadans by proposing, by way of initiative petition, to adopt more stringent registration requirements for sexual offenders, regardless of the offenders' notification levels. But then, the group might also place somewhere in their petition a provision abolishing the death penalty. While the group might reasonably expect that the public wants to enact the more stringent registration requirements, it is less reasonable to expect that the same voters favor abolishing the death penalty. And even if they were aware of both provisions, the people would face a "Hobson's choice"[2]; they could either accomplish the goal of further protecting the public from sex offenders while simultaneously abolishing a law that they generally favor, or forego the opportunity of increased sex offender protections in favor of preserving the death penalty. The single-subject requirement, then, is useful in focusing the petition signers' and voters' attention on the one subject to be advanced, without creating confusion over what that subject is, and without making them choose between competing policy goals.
In this case, as the majority concludes, the initiative petition impermissibly violates the single-subject requirement because it contains more than one subject. Indeed, despite their assertions that the initiative petition had as its impetus the U.S. Supreme Court's ruling in Kelo v. City of New London, Connecticut,[3] the proponents of the initiative petition acknowledged during oral argument and stated in their briefs that their petition intentionally addresses multiple subjects beyond the Kelo ruling. Moreover, in their briefs, the initiative's proponents were unable to agree to a single unified statement as to the initiative's general subject, in one instance arguing in favor of the paired subjects "eminent domain/government takings."
As the majority suggests, the initiative contains at least three separate subjects: fundamental property rights in Nevada; eminent domain actions; and governmental liability for a new and as of yet undefined claim known as "governmental action" (the legal elements of which appear to be defined only by whether the plaintiff has sustained "substantial economic loss," a term which is also *1255 undefined and left solely to future judicial discretion). Accordingly, I agree with the majority that this petition pertains to at least three different subjects, if not more, and as a result, violates NRS 295.009.
I disagree, however, that there exists any basis or legal authority for the device fashioned by the majority to remedy this violation  the discretionary severance and striking of certain provisions, so that any purportedly non-offensive provisions may remain on the ballot. As this court has previously recognized, the initiative process is a precious power "reserved to the people" of this state.[4] Courts should therefore always be circumspect in reviewing initiative petitions in response to pre-election challenges, giving deference to their placement on the ballot. That does not mean, however, that we may ignore admitted violations of the rules that plainly establish how the people of this state may amend their constitution and change their laws. In fashioning a "sever and strike" remedy for an admitted violation of the single-subject requirement, the majority has ignored the violation itself.
Respectfully, based on general principles of statutory construction, prior Nevada decisional law, and important public policy reasons, I disagree that the majority may do so. First and foremost, NRS 295.009 does not allow for the severance and striking of purportedly offensive provisions. That statute is entitled, "Requirements for petition."[5] In setting forth those requirements, the statute provides that "[e]ach petition for an initiative ... must ... [e]mbrace[] but one subject" (emphasis added). Accordingly, a petition that does not meet this threshold requirement is defective and by definition necessarily fails.[6] This court has repeatedly advocated adherence to the basic principle of statutory construction prohibiting a court from going beyond the terms of a plain and unambiguous statute,[7] yet the majority now completely disregards this well established principle in its entirety by engrafting a severability provision onto NRS 295.009. This it cannot do; the initiative is defective in whole, and as such, it must be wholly stricken from the ballot.[8]
Second, the majority's sever and strike determination has been undertaken without any separate authority and in express violation of this court's opinion in Rogers v. Heller,[9] which held that "initiative legislation is not subject to judicial tampering  the substance of an initiative petition should reflect the unadulterated will of the people and should proceed, if at all, as originally proposed and signed." In that case, concerning an initiative petition designed to increase funding to Nevada public schools, we declined to sever a provision that lacked sufficient funding for the appropriation it made, in violation of a threshold constitutional requirement for initiative petitions.[10] In declining to interfere with the components of a *1256 petition that had been "signed by thousands of voters," we recognized that if we failed to keep the initiative petition "substantively intact[,]... the people's voice would be obstructed."[11] Pointing out that we had no way of knowing "whether an initiative's drafters and signers would want an initiative to proceed without a primary component of the proposal," we concluded that the initiative must as a result be declared void for failing to meet the threshold requirement.[12] As this initiative also violates a threshold requirement for initiative petitions  a requirement recognized by the majority as valid under the Nevada constitution  the same standard should apply.
Further, the majority is proceeding without the development of any record that would form the basis for severing and striking certain provisions while leaving others on the ballot. As there is consequently no way of discerning whether subsections 1 and 8 are not "key" components of the initiative, the people's voice is no less obstructed here by the majority's determination that the initiative should be severed for those subsections' purported offense to NRS 295.009 than if the petition had failed to meet a threshold requirement under the Nevada Constitution.[13]
In fact, on the few occasions when courts of other jurisdictions have severed petitions for violations of the single-subject requirement, they have generally done so only after determining that the stricken provision was unconstitutional.[14] And even courts that have severed initiatives have generally refused to do so pre-election.[15] In this case, the majority has made no determination that subsections 1 and 8 violate the constitution, and indeed, nothing is inherently fundamentally unconstitutional with those subsections. Yet the majority strikes them from the petition.
This court historically has concluded, in the legislative context, that when it is not *1257 possible to determine from an act and the title thereof which portion of the act is valid and which is not, single-subject requirement violations by the Legislature render the entire legislative act void.[16] Instead of treating NRS 295.009 single-subject requirement violations the same, the majority concludes that the legislative history of that statute supports its theory of severability. But that is not the case, and in so concluding, the majority mistakenly takes the Legislature's preenactment modification of a draft statute as indicating its intent where no such intent can be found.[17] It does not follow that, by considering and omitting severability language, the Legislature intended to make available such a remedy; it is just as, if not more, reasonable to interpret the deletion as legislative recognition that a different remedy would more appropriately apply. It is logical to conclude that the Legislature believed that the same remedy that applies to its violation of the single-subject requirement  voiding the legislation  likewise would be applied to initiatives that pertain to more than one subject  complete nullification. As explained above, however, the plain language of NRS 295.009 designates the boundaries of a court's statutory interpretation powers, and that language does not include a severability provision.
Although as additional authority for striking certain provisions, the majority points to the initiative's subsection 14, which contemplates the proposed section's severability in the event a provision is stricken, that subsection certainly does not give the court license to strike provisions that do not have a separate legal basis for their removal, such as unconstitutionality or unenforceability.[18] This court recognized this basic concept in Rogers, appreciating that "[s]everability is a judicial doctrine recognizing the obligation of the judiciary to uphold the constitutionality of legislative enactments where it is possible to strike only the unconstitutional provisions."[19] Accordingly, despite the severability provision's broad terms, it is misused by the majority in this case to improperly sever and strike certain provisions that have not been determined constitutionally infirm.
Finally, to preserve unadulterated the will of the people, the proper remedy for the single-subject requirement violation here is to strike from the ballot the entire initiative. The same sanctity with which this court reviews initiative petitions should be given to the severance of their terms.[20] The majority has no cause for tampering with the language of an initiative petition signed by more than *1258 130,000 of the electorate. Some of those signers may have endorsed the eminent domain portion, but others may have endorsed the change in fundamental rights portion, while others the new government action portion, and yet others all of the concepts the petition embodies. Because this court lacks a factual or legal basis for severing and striking certain provisions over others, we should decline this remedy and invalidate the defective petition in its entirety.[21]
The majority, by creating this remedy of severing and striking portions of an initiative, has set a dangerous precedent for the future and strike provisions that violate the single-subject requirement, not because those provisions are unconstitutional or unenforceable, but simply because the court determines that the offending provisions fall outside the court's conjecture of what single-subject the petition is attempting to promote. But the majority fashions no analysis to employ in determining which of the provisions, signed by the people of this state, should stay, and which should be stricken. Such discretion, which, as well stated by a California court of appeal, allows the courts to employ pure "judicial surgery" in severing a petition,[22] creates an unworkable test for future cases and gives the courts unfettered freedom to tamper with the people's constitutional prerogative.[23]
Instead, courts should respect what the citizens of this state have signed by refusing to manipulate or tinker with it. While striking a petition that violates the single-subject requirement in its entirety perhaps seems severe, perverting the signers' will through discretionary judicial modification is no less drastic a remedy. Moreover, striking the petition in whole is less harsh a remedy than it at first glance seems. While it is recognized that drafting and circulating an initiative petition for signatures consumes considerable time and financial resources, a stricken initiative's proponents nonetheless are not without solution; they may cure the defects in their petition and prepare it for the next election. In all events, future initiative and referendum petition proponents must exercise great care to avoid single-subject requirement violations. As it now stands, however, future proponents must exercise even greater care in avoiding single-subject requirement violations, lest their will be subverted through the severance and striking of certain provisions by unfettered judicial discretion.
NOTES
[1] The Honorable David R. Gamble, Judge of the Ninth Judicial District Court, was designated by the Governor to sit in place of the Honorable Robert E. Rose, Chief Justice. Nev. Const. art. 6, § 4.
[2] See NRS 293.124.
[3] See County of Clark v. Upchurch, 114 Nev. 749, 961 P.2d 754 (1998) (acknowledging that, where a district court's decision in a declaratory relief action is based on statutory construction, this court's review is de novo).
[4] See County of Clark v. Doumani, 114 Nev. 46, 53, 952 P.2d 13, 17 (1998).
[5] Koller v. State, 122 Nev. ___, ___, 130 P.3d 653, 655 (2006) (citing City of Reno v. Reno Gazette-Journal, 119 Nev. 55, 58, 63 P.3d 1147, 1148 (2003)).
[6] 203 F.3d 738 (10th Cir.2000).
[7] Id. at 746.
[8] Id. at 745 (stating that the single-subject requirement "cannot be characterized as a direct limitation on the quantity of speech available to them").
[9] Buckley v. American Constitutional Law Foundation, Inc., 525 U.S. 182, 205, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999).
[10] Because Article 19, Section 5 expressly grants the Legislature the authority to enact laws that facilitate the provisions of Article 19, which, we conclude, includes enacting a single-subject requirement for initiative petitions, the proponents' reliance on this court's decision in State v. Findley, 20 Nev. 198, 19 P. 241 (1888), is misplaced. Unlike the statute at issue in Findley, which denied the right to vote to members of a particular church, NRS 295.009 simply requires that different subjects be addressed in different initiatives.
[11] Cf. Citizens for Honest Gov't v. Sec. of State, 116 Nev. 939, 947, 11 P.3d 121, 126-27 (2000) (rejecting a constitutional challenge to statutory limitations on the right to circulate a petition for the recall of an elected official, and noting that, "in determining whether legislation regulating the recall procedures `aid[s] the operation' of the recall right, this court has held that `any statutory provision intended to safeguard the operation of recall procedures aids in the operation thereof'" (quoting Fiannaca v. Gill, 78 Nev. 337, 345, 372 P.2d 683, 687 (1962))).
[12] 504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992).
[13] Id. at 433-34, 112 S.Ct. 2059.
[14] Id. at 434, 112 S.Ct. 2059.
[15] Id.
[16] Id.
[17] Id.
[18] Citizens for Honest Gov't v. Sec. of State, 116 Nev. 939, 11 P.3d 121 (2000).
[19] Campbell, 203 F.3d at 745. Colorado's single-subject provision states that "[n]o measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title." Colo. Const. art. V, § 1(5.5).
[20] Campbell, 203 F.3d at 744-45. See, e.g., Buckley v. American Constitutional Law Foundation, Inc., 525 U.S. 182, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999) (noting that various restrictions on Colorado's initiative process reduced the overall quantum of speech by placing limits on who could circulate petitions and by effectively discouraging people from circulating petitions by eliminating the anonymity of the circulators, and consequently applying strict scrutiny to strike down those restrictions).
[21] Campbell, 203 F.3d at 742-46.
[22] Id. at 745-47.
[23] Id. at 745.
[24] Id. at 745-46.
[25] Id.
[26] Id. at 746.
[27] Id.
[28] Id.
[29] Id.
[30] Id.
[31] Biddulph v. Mortham, 89 F.3d 1491, 1500-01 (11th Cir.1996).
[32] NRS 295.009(2).
[33] 545 U.S. 469, 125 S.Ct. 2655, 162 L.Ed.2d 439 (2005).
[34] Id. at 2668.
[35] In support of their argument that section 1 is "functionally related" and "germane" to eminent domain, the proponents point out that Article 1, Section 8(6) of the Nevada Constitution and the Fifth Amendment to the United States Constitution already protect property rights by requiring the payment of just compensation when private property is taken. This argument is irrelevant to our analysis here, however, as it does not in any way demonstrate how section 1, which creates a broad new category of fundamental rights, is "functionally related" or "germane" to the subject of eminent domain.
[36] County of Clark v. Alper, 100 Nev. 382, 391, 685 P.2d 943, 949 (1984).
[37] To extent that the proponents imply that the denial of a request for a zoning change or special use permit is not "government action" but is instead "government inaction," that contention lacks merit. The government agency's denial of such a request would clearly be considered government action.
[38] See Hammerschmidt v. Boone County, 877 S.W.2d 98, 104 (Mo.1994) (severing portion of bill that violated single-subject rule and allowing primary subject to remain in effect); State ex rel. Hinkle v. Franklin Cty. Bd. of Elec., 62 Ohio St.3d 145, 580 N.E.2d 767, 770 (1991) (severing offending portion of bill to cure single-subject defect); PA Against Gambling Expansion Fund v. Com., 583 Pa. 275, 877 A.2d 383, 403 (2005) (severing provisions of gaming act that were not germane to single subject and "clearly not essentially and inseparably connected with the rest of the Act").
[39] See Senate of the State of Cal. v. Jones, 21 Cal.4th 1142, 90 Cal.Rptr.2d 810, 988 P.2d 1089, 1106 (1999) (declaring void an initiative that contains more than one subject and declining to sever offending portions in compliance with the state constitution); Fine v. Firestone, 448 So.2d 984, 992-93 (Fla.1984) (holding that citizen initiate violated constitutional single-subject requirement and affirming removal from ballot).
[40] We recently pointed to the distinctions in applying constitutional and statutory provisions, albeit in a different context, in Nevadans for Nevada v. Beers, 122 Nev. ___, ___ P.3d ___, 2006 WL 2589368 (Adv. Op. No 80, September 8, 2006).
[41] S.B. 224 (bill text, as introduced, March 21, 2005); See Senate Journal 73d Leg., at 246 (Nev., March 21, 2005).
[42] S.B. 224 (bill text, as introduced, March 21, 2005).
[43] S.B. 224, § 2(1) (March 21, 2005).
[44] Assembly Daily Journal, 73rd Leg. (Nev., May 27, 2005); see also S.B. 224 amend. no. 1102.
[45] Assembly Daily Journal, 73rd Leg. (Nev., May 27, 2005); see also S.B. 224 amend. no. 1102; Work Session on A.B. 185 Before the Sen. Leg. Operations and Elections Comm., 73d Leg. (May 12, 2005).
[46] Senate Journal, 73rd Leg., at 2044 (Nev., June 1, 2005); Senate Journal, 73d Leg., at 2208, 2231 (Nev., June 3, 2005).
[47] Assembly Daily Journal, 73d Leg., at 92 104, 142 (Nev., June 6, 2005); Senate Journal, 73d Leg., at 2473-81, 2516 (Nev., June 6, 2005).
[48] See, e.g., Carson-Tahoe Hosp. v. Bldg. & Constr. Trades, 122 Nev. ___, 128 P.3d 1065, 1068 (2006) (noting generally that previous version of a law considered but not enacted by the legislature may be examined in determining legislative intent). Although the dissent cites this court's decision in State v. Hallock, 19 Nev. 384, 390, 12 P. 832, 835 (1887), for the proposition that, in the legislative context, this court has historically concluded that single-subject requirement violations by the Legislature render the entire legislative act void when it is not possible to determine from an act and its title which portion of the act are valid and which are not, the Hallock decision also conceptualizes that, under other circumstances, it may be permissible to sever offending portions of the act.
[49] Brewery Arts Ctr. v. State Bd. Examiners, 108 Nev. 1050, 1056, 843 P.2d 369, 373 (1992) (citing County of Clark v. City of Las Vegas, 92 Nev. 323, 336, 550 P.2d 779, 788 (1976)); see also Santa Barbara Sch. Dist. v. Superior Court, 13 Cal.3d 315, 118 Cal.Rptr. 637, 530 P.2d 605, 618 n. 7 (1975) (recognizing that the same severability test applies to initiatives and statutes enacted by the legislature); Ray v. Mortham, 742 So.2d 1276, 1280-81 (Fla.1999) (applying severability doctrine to citizen-initiated constitutional amendments), modified on other grounds by Cook v. City of Jacksonville, 823 So.2d 86 (Fla.2002); cf. Nevada Judges Ass'n v. Lau, 112 Nev. 51, 60-61, 910 P.2d 898, 904 (1996) (severing initiative into two separate sections).
[50] Nev. Const. art. 19, § 2(1) (providing that "the people reserve to themselves the power to propose, by initiative petition ... amendments to this Constitution, and to enact or reject them at the polls").
[51] Id. § 5.
[52] University Sys. v. Nevadans for Sound Gov't, 120 Nev. 712, 734, 100 P.3d 179, 195 (2004).
[53] 117 Nev. 169, 177, 18 P.3d 1034, 1039 (2001).
[54] Id.
[55] Id. at 175, 177, 18 P.3d at 1038-39.
[56] 118 Nev. 574, 583, 53 P.3d 387, 392 (2002), overruled in part on other grounds by Garvin v. District Court, 118 Nev. 749, 59 P.3d 1180 (2002).
[57] 118 Nev. 749, 751, 59 P.3d 1180, 1181 (2002).
[58] See, e.g., Comment, Limitations on Initiative and Referendum, 3 Stan. L.Rev. 497, 503 (1951).
[59] Gallivan v. Walker, 54 P.3d 1069, 1080 (Utah 2002); see also State ex rel. Stenberg v. Moore, 258 Neb. 199, 602 N.W.2d 465, 474 (1999) (ruling that "the Legislature and the electorate are concurrently equal in rank as sources of legislation").
[60] Perkins v. Eskridge, 278 Md. 619, 366 A.2d 21, 32-33 (1976) (citing McCulloch v. Maryland, 17 U.S. (4 Wheat) 316, 415, 4 L.Ed. 579 (1819); Alexander v. State, 274 Ala. 441, 150 So.2d 204, 208 (1963); Williams v. State, 307 N.E.2d 457, 461 (Ind.1974), In re Proposal C, 384 Mich. 390, 185 N.W.2d 9, 14 (1971); and Dean v. Paolicelli, 194 Va. 219, 72 S.E.2d 506 (1952)), overruled on other grounds by Parrott v. State, 301 Md. 411, 483 A.2d 68 (1984).
[61] Id. at 33 (quoting Board of Supervisors of Elections v. Attorney Gen., 246 Md. 417, 229 A.2d 388, 394 (1967)).
[62] King v. Board of Regents, 65 Nev. 533, 556, 200 P.2d 221, 232 (1948).
[63] Train Trench, 118 Nev. at 583, 53 P.3d at 392.
[64] See, e.g., Glover v. Concerned Citizens for Fuji Park, 118 Nev. 488, 498-99, 50 P.3d 546, 552-53 (2002), overruled in part on other grounds by Garvin v. Dist. Ct., 118 Nev. 749, 59 P.3d 1180 (2002); Train Trench, 118 Nev. at 585, 53 P.3d at 393-94.
[65] 118 Nev. at 582, 53 P.3d at 392.
[66] See, e.g., NRS 2.120(1), (2) (recognizing that "the supreme court may make rules not inconsistent with the constitution and laws of the state for its own government, the government of the district courts, and the government of the State Bar of Nevada" and that "[t]he supreme court, by rules adopted and published from time to time, shall regulate original and appellate civil practice and procedure, including, without limitation, pleadings, motions, writs, notices and forms of process, in judicial proceedings in all courts of the state"); Nev. Const. art. 6, § 19(1) (providing that the chief justice as administrative head of the court system and subject to rules that the supreme court may adopt, may apportion the work of the supreme court among justices, and may recall to active service any retired justice or judge and assign that justice or judge to "appropriate temporary duty within the court system").
[67] 122 Nev. ___, 141 P.3d 1224 (Adv.Opn. No. 78, September 8, 2006) (declining to consider due process, equal protection, and right of privacy challenges to an initiative as part of this court's preelection review).
[68] Id.
[69] Id.
[70] Id.; see also Garvin v. Dist. Ct., 118 Nev. 749, 766, 59 P.3d 1180, 1191 (2002) (declining to address arguments related to an initiative's substantive validity during preelection review, but noting that parties could challenge the substantive validity of the legislation after it was enacted).
[71] In light of the nature and urgency of this matter, we suspend NRAP 41(a) and direct the clerk of this court to issue the remittitur forthwith. See Rogers, 117 Nev. at 178 n. 24, 18 P.3d at 1040 n. 24.
[1] Banegas v. SIIS, 117 Nev. 222, 225, 19 P.3d 245, 247 (2001).
[2] Id.
[3] See California Commercial v. Amedeo Vegas I, 119 Nev. 143, 145, 67 P.3d 328, 330 (2003).
[4] 545 U.S. 469, 125 S.Ct. 2655, 162 L.Ed.2d 439 (2005). Interestingly, the petition itself does not mention Kelo. However, the proponents have publicly promoted the petition as dealing with that case and admit that it is the first impetus for this petition.
[5] This might include anything from automobiles to professional licenses.
[6] 117 Nev. 169, 177, 18 P.3d 1034, 1039 (2001).
[1] See Hearing on S.B. 224 Before the Senate Legislative Operations and Elect. Comm., 73rd Leg. (Nev., April 12, 2005) (indicating that the purpose of Nevada's single-subject law is to prevent petition signer and voter confusion, especially regarding potentially "hidden" subjects in a petition); Campbell v. Buckley, 203 F.3d 738, 746 (10th Cir.2000) (recognizing that the single-subject rule advances the dual purposes of prevent voter confusion and promoting informed decisions); Senate of the State of Cal. v. Jones, 21 Cal.4th 1142, 90 Cal.Rptr.2d 810, 988 P.2d 1089, 1105-06 (1999) (noting that the "basic objectives" behind California's single-subject rule are to avoid voter confusion and obscuring or manipulating the electorate's intent).
[2] A "Hobson's choice" is "an apparently free choice when there is no real alternative." Merriam Webster's Collegiate Dictionary 551 (10th ed.1997).
[3] 545 U.S. 469, 125 S.Ct. 2655, 162 L.Ed.2d 439 (2005).
[4] Garvin v. Dist. Ct., 118 Nev. 749, 751, 59 P.3d 1180, 1181 (2002); see Nev. Const. art. 19, § 2(1).
[5] See Coast Hotels v. State, Labor Comm'n, 117 Nev. 835, 841-42, 34 P.3d 546, 551 (2001) ("The title of a statute may be considered in determining legislative intent.").
[6] See generally Merriam Webster's Collegiate Dictionary 995 (10th ed.1997) (defining "requirement" as both "something required: ... NECESSITY" and "something essential to the existence or occurrence of something else: CONDITION").
[7] Coast Hotels, 117 Nev. at 840, 34 P.3d at 550; Nevada Power Co. v. Haggerty, 115 Nev. 353, 366, 989 P.2d 870, 878 (1999); City Council of Reno v. Reno Newspapers, 105 Nev. 886, 891, 784 P.2d 974, 977 (1989).
[8] See, e.g., Taxpayer Protection v. Unfair Tax Schemes, 199 Ariz. 180, 16 P.3d 207, 209 (2001) (invalidating an initiative petition under the state constitution's one-subject rule and declining to severe the petition into three separate petitions because the constitution gave the court "no authority to adopt such an extraordinary measure," when no single provision separately met the threshold constitutional requirements for initiative petitions).
[9] 117 Nev. 169, 178, 18 P.3d 1034, 1040-41 (2001).
[10] Id. at 172-77, 18 P.3d at 1035-38.
[11] Id. at 177, 18 P.3d at 1039.
[12] Id. at 178, 18 P.3d at 1040.
[13] Rogers, 117 Nev. at 177, 18 P.3d at 1039; see also Bennett v. Drullard, 27 Cal.App. 180, 149 P. 368, 370 (1915) (refusing, for "both moral and legal reasons," including express charter language, to allow for the severance of a petition, because the court would then be "doing an unfair and unjust act" in "directing something to be placed on the ballot which the hundreds of voters did not petition for at all"); Hazelwood Yellow Ribbon Committee v. Klos, 35 S.W.3d 457, 470-71 (Mo.Ct.App.2000) (disallowing severance because the court could not ascertain the petition drafters' and signers' intent and motivation).
[14] See Cal. Trial Lawyers Ass'n v. March Fong Eu, 200 Cal.App.3d 351, 245 Cal.Rptr. 916, 922 (1988) (noting that severance has been permitted in a few cases and only when the stricken provisions were found unconstitutional), abrogated on other grounds by Lewis v. Superior Court, 19 Cal.4th 1232, 82 Cal.Rptr.2d 85, 970 P.2d 872 (1999); Advisory Opinion to Attorney General, 703 So.2d 446, (Fla.1997) (striking ballot petition that violated Florida's single-subject rule); Ray v. Mortham, 742 So.2d 1276 (Fla.1999) (severing unconstitutional provision of initiative, even though initiative met single-subject requirements), holding modified on other grounds by Cook v. City of Jacksonville, 823 So.2d 86 (Fla. 2002); La. Associated Gen. Contractors v. State, 669 So.2d 1185, 1201 (La.1996) discussing the severability doctrine in the context of a law's constitutionality); see also Rogers, 117 Nev. at 177, 18 P.3d at 1039 (recognizing that "[s]everability is a judicial doctrine recognizing the obligation of the judiciary to uphold the constitutionality of legislative enactments where it is possible to strike only the unconstitutional portions" (citing Ray, 742 So.2d at 1280)).
[15] See, e.g., Citizens for Resp. Behavior v. Superior Court, 1 Cal.App.4th 1013, 2 Cal.Rptr.2d 648, 661 (1991) (rejecting the suggestion that an initiative's severability provision saves at least some parts of the proposal, because, "[w]hile severance of offending portions of a statute is often a permissible approach if the law has been enacted, the policy must be different when a court is faced with a proposed law," since pre-election severance could work "a deception on the voters"); Ray, 742 So.2d 1281-82, 1282 (distinguishing between invalidating, pre-election, petitions for single-subject requirement violations and severing provisions from petitions, post-enactment, in the wake of a determination of infirmity, noting that "[t]he issue of severability arises only after an amendment already approved by the voters has been challenged"); see also In re Initiative Pet. No. 362, 899 P.2d 1145, 1152-53 (Okla.1995) ("Where an initiative expressly provides for severability we will not declare one of its sections unconstitutional at the pre-election stage." (internal quotations omitted)); accord Wyoming Abort. Rights League v. Karpan, 881 P.2d 281, 289 (Wyo.1994).
[16] See Nev. Const. art. 4, § 17; State v. Hallock, 19 Nev. 384, 390, 12 P. 832, 835 (1887).
[17] See generally Mineral County v. State, Bd. Equalization, 121 Nev. ___, ___, 119 P.3d 706, 710 (2005) (recognizing that "[w]hen the Legislature is silent, this court should not fill in alleged legislative omissions based on conjecture as to what the [L]egislature would or should have done.... The Legislature's silence on [a] right... cannot be viewed as an expression of its intention to grant such a right.") (internal quotations omitted); Providence Washington Ins. Co. v. Grant, 693 P.2d 872, 878 (Alaska 1985) (declining "to attribute significance to the legislature's mere inaction," since "`[t]o explain the cause of nonaction by Congress when Congress itself sheds no light is to venture into speculative unrealities'") (quoting Helvering v. Hallock, 309 U.S. 106, 119-20, 60 S.Ct. 444, 84 L.Ed. 604 (1940)); Department of Social Serv. v. Saunders, 247 Conn. 686, 724 A.2d 1093, 1103(1999) ("It is a basic tenet of statutory construction that [courts] rely on the intent of the legislature as that intent has been expressed." (internal quotation omitted)).
[18] See, e.g., Santa Barbara School District v. Superior Court, 13 Cal.3d 315, 118 Cal.Rptr. 637, 530 P.2d 605, 649-50 (1975) (indicating that a severability provision, which allows severability but "does not conclusively dictate it," may be used only to sever invalid provisions from those that are valid, if the portion that remains is complete and would likely have been enacted by the legislative body regardless); Fine v. Firestone, 448 So.2d 984, 992 (Fla.1984) (determining that a severability clause did not operate to save a petition that violated a constitutional one-subject rule, because the clause was not part of the language appearing on the ballot and because it could not be used to "circumvent [the Florida] Court's responsibility to determine whether the proposed amendment may constitutionally be placed before the voters").
[19] Rogers, 117 Nev. at 177, 18 P.3d at 1039 (emphasis added) (citing Ray, 742 So.2d at 1280).
[20] Because they represent the direct legislative voice of the people, see Garvin, 118 Nev. at 753, 59 P.3d at 1183, initiative petitions should be reviewed by courts with great prudence. As a result, and as the majority notes, this court has recently declared that it generally will not consider non-threshold challenges to initiative petitions' substance. Herbst Gaming, Inc. v. Sec'y of State, ___ Nev. ___, 141 P.3d 1224 (Nev.Adv.Op. No. 78, September 8, 2006). Nevertheless, here, by severing proposed legislation without a factual or legal basis, or a determination of invalidity, the majority encroaches upon the protections afforded the people of this state under the separation of powers doctrine, which requires that the judicial, legislative, and executive functions remain separate. Nev. Const. art. 3, § 1; cf. McAlpine v. University of Alaska, 762 P.2d 81, 94-95 (Alaska 1988) (concluding that an initiative petition may be severed when in violation of the single-subject rule, if the remainder of the proposed legislation can be given legal effect and represents the measure's "spirit," and the measure's proponents' wishes appear to be reflected in the severance).
[21] As I would strike the entire initiative because it violates NRS 295.009's single-subject requirement, I do not address the sever and strike issue in light of the administrative/legislative distinction. Nevertheless, I note my agreement with the majority's discussion of this issue.
[22] March Fong Eu, 245 Cal.Rptr. at 922.
[23] See Bennett, 149 P. at 370 (recognizing that the idea of severance is inconsistent with "the whole theory of direct legislation, ... that the people have a right to propose their own laws, and to vote upon them as proposed, without having the same altered in any manner whatsoever by any person or persons whomsoever.") (internal quotations omitted).